JERRY HAMMOND AND TERRY EVANS *v.* STATE OF ARKANSAS

5355 428 S. W. 2d 639

Opinion delivered June 3, 1968

 

*Stephens & Lewis,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Jerry Hammond and Terry Evans were convicted in the White County Circuit Court on January 25, 1968, of the crime of burglary and grand larceny, and were sentenced to the Arkansas State Penitentiary for two years on the count of burglary, and one year on the count of grand larceny. From this conviction, appellants bring this appeal. For reversal, it is first asserted that the trial court erred in admitting evidence obtained by the sheriff during a search of Evans' premises.

The evidence reflects that Pete Cole, a radio engineer in Searcy, together with Earl Baker and Billy Davis, owned a cabin two miles west of Honey Hill Church in White County. The cabin was equipped in the same manner as any house, with furniture, T.V., stereo, and various other items of personal property. This cabin was broken into and a number of items stolen therefrom. Cole made a partial list of property that had been taken, and reported the theft to Sheriff John Davis of White County. On the afternoon of November 30, 1967, the sheriff, together with the Chief of Police of Searcy, Waymon Goree, and Cole, went to the apartment occupied by Evans, and the sheriff knocked on the door. Evans responded, "Come in," and the three, without identifying

themselves, went inside. The sheriff told Terry that he (the sheriff) had heard that this appellant might have some information about the burglary:

"He said, 'Hell, here it is; you might as well take it; I've been in so much trouble already that I'm going to the penitentiary anyway.' And I said, 'That isn't what I came for,' I just wanted to talk to him because I'd heard he might have some information. Then, I advised him of his rights. * * *

"I told him I had information that he might know something about the burglary of the cabin, and I told him, 'You know you don't have to talk to me, that anything you say can be used against you,' and he said, 'Hell, here it is.' "

Asked whether he advised Evans of his right against self-incrimination, the sheriff replied that he carried a card with him which he would read to suspects, and he said Evans was told that he did not have to say anything, and that he was entitled to an attorney; that, if he couldn't pay for an attorney, the court would appoint one for him:

"I told him he had the right of an attorney, and I advised him of his rights. I have handled Terry several times before."

According to the officer, Evans replied that he did not want an attorney, and he suggested that the sheriff take merchandise which Cole recognized, on entering the apartment, as having been in the burglarized cabin.[1] However ,the sheriff refused to take the property at that time, but arrested Evans and obtained a search warrant for Terry's apartment, and also the apartment of Oscar McDougal, who was also subsequently charged on the

[1] A floor type lamp with the base missing, a bed spread, a pile of clothing and a blanket, a part of the property taken, and in plain view, were recognized by Cole when they went into the room.

burglary count[2]. The information about McDougal was furnished by Terry. After obtaining the search warrant, the sheriff found two red bed spreads, one pole lamp, one white sheet, and five stereo records on this appellant's premises. A search of McDougal's apartment revealed one Zenith TV, one stereo record player, records, a lamp, an electric clock, and an assortment of knives, forks and spoons, which were identified by Cole. Evans admitted his part in taking the property. As the officers were searching the apartment, Jerry Hammond, whose car was parked at the back of the apartment, came up, and wanted to know what was going on. The sheriff replied that they were recovering "that stolen merchandise." Hammond said that he didn't know anything about it, but Officer Hunnicutt, of the State Police, who was assisting in the search, placed Hammond under arrest, and the sheriff testified that Hunnicutt stated to appellant Hammond:

"Well, you are under arrest, and he [Hunnicutt] said I would rather you didn't say—he started to say something, and he said I'd rather you didn't say anything about it. So we arrested him and placed him in the police car. Fish [Hammond]—we hadn't placed him when he said that, but about that time Fish came out—Terry came out from under the floor with a box of this while Fish was standing there. And Terry looked up at Fish and said, 'You might as well tell them, Fish, they've caught us anyway.' He said, 'I've done told them.' So Hunnicutt told Hammonds again, he says, 'I'd rather you didn't say anything,' and he took him and put him in the police car, and we took him to the County Jail. We loaded that car and the other car with the merchandise that came from under the floor.

"When he got to the County Jail, again on the way to the County Jail he tried to indicate that he was with them and wanted to tell us about it. We told him again that we didn't want to talk to him about it. When we got

---

[2]McDougal's conviction is not before this court.

to the County Jail when we was going through his things, taking his things out of his pockets, he told us that he wanted to tell us about it."[3]

Appellants contend that the evidence obtained both before, and after, the search warrant was obtained, was acquired illegally. A motion to quash the information, and to suppress the evidence was filed by appellants, and this matter was heard by the court in chambers. The court overruled the motion, finding that Evans was advised of his constitutional rights before making any statement; that the search warrant obtained was valid, based upon information given to the sheriff by Cole, and voluntarily by appellant. Appellants say that the initial search was illegal, and assert that Evans did not invite the police and Cole to search his apartment, nor did he waive any constitutional right against an illegal search by saying, "Come in." There was testimony that Evans was in bed, and appeared sleepy when the officers and Cole entered the apartment, and it is argued that appellant did not understand the consequences of his act in responding to the knock on the door, and that the sheriff and police chief did not identify themselves before coming in. Appellants rely upon our case of *Mann* v. *City of Heber Springs,* 239 Ark. 969, 395 S. W. 2d 557, where we said that "voluntary consent requires sufficient intelligence to appreciate the act as well as the consequences of the act agreed to." The federal case of *Mapp* v. *Ohio,* 367 U. S. 643, holding that evidence illegally obtained is not admissible in the state courts is also relied upon.

We find no merit in this contention. We do not see that *Mapp* applies, for we are of the view that the evidence was not illegally obtained. Nor is there any showing that Evans did not have sufficient intelligence to appreciate the consequences of inviting visitors into the room. In fact, it is only argued that he was in bed and

---

[3]Hammond also implicated two other boys, who pleaded guilty on the morning of the trial of these appellants.

looked "sleepy," or, as the defense counsel expressed it in asking questions, "groggy." This is hardly sufficient to constitute a defense. In the case of *Harris* v. *Stephens*, 361 F. 2d 888, the proof reflected that the sheriff of Drew County went to the home of a suspect at night, and was admitted by the suspect (Trotter), who was wearing blood-stained undershorts. Trotter, being unable to explain the blood stains, was arrested, and taken to the jail and incarcerated. Thereafter, the sheriff, accompanied by city policemen, having received information that Albert Harris had been with Trotter that night, proceeded to the home of Harris and was admitted. Upon receiving an unsatisfactory explanation from Harris as to his earlier whereabouts, the sheriff asked to see the clothes the suspect had worn. Harris' clothes were stained with blood, and the victim's wrist watch was found in his billfold. Harris was advised by the sheriff of his constitutional rights, and arrested. The same contentions were made there as appellants presently make, but the United States Court of Appeals (Eighth Circuit) found no merit in these contentions, citing *Schook* v. *United States*, 337 F. 2d 563. Here, the sheriff had been advised by owners of the cabin which had been burglarized that approximately $1,500.00 worth of property had been taken. Without making a search, a number of articles were clearly visible which were identified as being part of the property taken during the burglary. Evans was arrested, and the sheriff subsequently obtained a search warrant and found additional property upon returning to the apartment.

The next two points deal with an allegation that the court and prosecutor erroneously called to the attention of the jury the fact that the appellants did not testify in their own defense. The court gave the following instruction:

"Thereupon, the Court, at the request of the Prosecuting Attorney will give the instruction which says to the jury that if they find Defendant, or either of them,

had in their possession property recently stolen that this fact is evidence from which inference of guilty may be drawn and is to be considered by the jury in arriving at guilt or innocence; to which counsel for defendants objects; and which said objection is by the Court overruled, to which action and ruling of the Court counsel for Defendants objects: Defendants object to this particular instruction, that it draw[s] inference of guilt by the mere possession of stolen property and which requires defendants to explain in that it would require defendants to testify in violation of their rights of self-incrimination.''

Now, this is not a correct instruction, mainly because the court did not add, after ''their possession property recently stolen,'' the phrase, ''without reasonable explanation of that possession.'' However, it will be noted that the objection treats the instruction as though the latter clause had been used, *i. e.*, the objection is *not* that the court left out this last phrase, but rather, that the instruction does require an explanation from the appellants—which a correct instruction would have stated.

Appellants argue that this instruction placed them in the position of being compelled to testify, *i. e.*, offer an explanation, and that the instruction was a judicial comment upon the failure of appellants to deny the charges. In their brief, appellants state:

''* * * It is, in no uncertain terms, an instruction to the jury that the defendants are guilty because they did not deny the charges. The instruction so prejudiced the jury against the defendants, that this alone is ample reason to reverse the verdict.''

There is no merit in this contention, and the court's overall instructions told the jury that the defendants were innocent until proven guilty; that the presumption of innocence remained with them throughout the trial,

and that any reasonable doubt as to their guilt should be resolved in their favor.

It is also argued that certain remarks of the Prosecuting Attorney before the jury amounted to a comment upon the failure of appellants to testify. During closing argument, the prosecutor made the following statements, and those now contended to be prejudicial are italicized:

"The proof's in here that the McDougal boy admitted it, and the proof's in here that the other boy, or Jerry Hammond, or Jerry 'Fish' Hammond, admitted it. *And it's uncontradicted and it's undisputed.*

"Now then, what does that bring us down to just purely and simply? We just have no other—there's no alternative. It's inconceivable to me of anything other than guilty on burglary, without question. There is even an inference when you've found stolen property and the possession of it is not explained. That's not enough to put you in the penitentiary itself; but, that alone is inference of your guilt. You say, 'Well, it might happen to me. They might catch me with it.' *You're going to answer pretty quick where you got it, where you bought it, and what you did with it. We have no such explanation.* * * *

"Is he guilty? or is he innocent? If he's guilty, then talk about the sentence. If there's extenuating circumstance, then, sure, take into consideration the minimum. That's why—that's what minimum sentences are for, if there's extenuating circumstances. I know of none here. *None has been called to your attention here. None has been told you here.* * * *

"These aren't boys we are jerking out of high school out here and bringing into court, bringing them up here for the first time, and they enter a plea of guilty, beg for leniency, to be placed on probation, be permitted to return back to school with certain restrictions on it

by the Court, admit they made a mistake. Gentlemen, that's not the case. That's not this case. Not at all.

"They've come in here and they've pleaded not guilty. There's been no considerations asked. *There's been no considerations for you to even consider.*

Mr. Lewis: Your Honor, this is the fourth time the Prosecuting Attorney's made comment on the Defendants' failure to testify.

The Court: No, sir; I don't think that was a comment on their failure to testify, until you brought it to the attention of the jury.

Mr. Lewis: We object to it, Your Honor.

The Court: Very well. The objection is overruled."

In the first place, it will be noted that there is no objection to the first three italicized statements. Even on the fourth occasion, there was no actual objection, defense counsel merely commenting that "this is the fourth time the Prosecuting Attorney has made comment on the defendants' failure to testify." It is not clear whether the objection made was to the statement of the Prosecuting Attorney or the statement of the court mentioning that counsel had brought it to the attention of the jury. In either event, there was no exception to the overruling of the objection.

However, entirely aside from the failure to object and except to the rulings of the court, there is no merit in the contention. The first italicized statement can simply refer to the fact that no explanation was given to the sheriff or other officers, of how, or where, the stolen property had been obtained. We cannot visualize any person, innocently holding stolen goods, waiting until he is tried by a jury to explain—rather, he would make his explanation to the officers when they made the arrest.

The second comment refers to extenuating circumstances, and certainly that testimony could as properly have been offered by friends or relatives as by the appellants themselves. It is difficult to see how "there's been no considerations for you to even consider" can be termed a comment on the failure of appellants to take the stand in their own defense. Actually, much stronger statements have been held to not constitute a comment upon the failure to testify.[4]

[4]For instance, in *Davis* v. *State*, 96 Ark. 7, 130 S. W. 547, the Prosecuting Attorney told the jury:

" 'He (referring to the defendant) told Bentley and Dr. Cunningham how he had administered the medicine to her to produce an abortion. And it is undisputed and undenied in this case, and he cannot deny it.' These remarks, we think were but the expression of the opinion of the State's Attorney as to the weight of the testimony of these two witnesses, and could not fairly be construed to refer to the fact that the defendant had not testified in the case, and did not tend to create any presumption against him by reason of his failure to testify."

In *Culbreath* v. *State*, 96 Ark. 177, 131 S. W. 676, the opinion recites:

"Another ground urged for reversal is as to alleged improper remarks of an attorney representing the State in his closing argument. The following are the objectionable remarks: 'Where was the defendant that day? He has never seen fit to say. He has not shown by any one where he was between the hours of 10 o'clock in the morning and 1:30 in the afternoon.' Taking the whole statement together, we do not think it can fairly be construed as a comment or criticism on defendant's failure to testify in his own behalf or as calling attention to that fact. It was merely an expression of the opinion of counsel that the defendant had not adduced evidence accounting for his whereabouts during the hours named."

In *Sanders* v. *State*, 164 Ark. 491, 262 S. W. 327, the opinion reflects:

"The prosecuting attorney, in his closing argument, among other things said: 'It is not denied that the defendant sold the liquors mentioned in the indictment. *He has not denied it* [emphasis supplied;] Mr. DeBois did not deny it in his argument; Mr. Miller does not deny it in his argument to you gentlemen, and no one else has denied it. The witnesses have testified that they bought it, and so the only question for you gentlemen to determine, under the law as given you by the court, is whether or not the stuff which the defendant did sell was intoxicating, or contained alcohol.' The appellant entered a plea of not guilty to the indictment, but did not testify at the trial. He contends that the court erred in overruling his objection to the above argument.

"When the remarks of the State's attorney are considered as a whole, they cannot be fairly interpreted to have reference to the

It is next asserted, "It was prejudicial error for the Prosecuting Attorney to state to the jury in his opening statement material facts without later offering proof in support of them." The transcript does not contain the opening statement of the Prosecuting Attorney, and we accordingly cannot consider this point on appeal.

Finally, it is argued that the trial court erred in admitting into evidence the confessions of the appellants, which it is argued were made before they were adequately advised of their rights against self-incrimination.

As to Evans, the testimony has already been reviewed, and it reflects that all warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, were given by the sheriff to Evans, though, at the very outset, Evans stated, "Hell, here it is; you might as well take it; I've been in so much trouble already that I'm going to the penitentiary anyway." There is no evidence that appellant Hammond was given the warnings set out in *Miranda,* but there is plenty of evidence that Hammond made these statements spontaneously, and entirely voluntarily, even though being told by Hunnicutt, "I'd rather you didn't say anything." There is not a single line of evidence in the record that this statement was not made.

We do not take *Miranda* to mean that a man cannot voluntarily open his mouth. In *Turney* v. *State,* 239 Ark. 851, 395 S. W. 2d 1 (in which the United States Supreme Court denied certiorari), this court, in distinguishing Turney from *Escobedo* v. *Illinois,* 378 U. S 478, said:

"We see no resemblance in the facts related and the facts that are presently before us. Here, Officer Caldwell, of the State Police, arrested Turney at his residence on a Monday at approximately 4:30 A.M., serving

---

failure of the defendant to testify, but only to the fact that the witnesses had testified that the defendant sold the liquors mentioned in the indictment, and that they had bought the same, and that such fact was undisputed by the testimony."

a warrant of arrest, which had been issued by a Justice of the Peace. Caldwell testified that he asked Turney 'point blank why would a man living in a house like he was, with his job, get involved in something like this, and he said he didn't know and that he must be out of his mind. He then admitted his part in the theft to me and told me at that time where the property was.' Thereafter, Turney directed the officers to the location of the stolen property. It will be thus observed that Sergeant Caldwell was not carrying out a process of interrogation for the purpose of obtaining incriminating statements. The simple statement, above quoted, was responded to by the spontaneous admission of guilt by Turney.''

See also *Bivens* v. *State*, 242 Ark. 362, 413 S. W. 2d 653.

Finding no reversible error, the judgment is affirmed.