STATE of Maine

v.

Douglas B. FARLEY.

Supreme Judicial Court of Maine.

June 3, 1976.

John E. Welch, Dist. Atty., Houlton, Charles K. Leadbetter, Waldemar G. Buschmann, Michael D. Seitzinger, Asst. Attys. Gen., Augusta, Paul H. Mills, Law Student, for plaintiff.

Stephen Canders, Presque Isle, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Once again we are confronted with a claim that a volunteered [1] spontaneous confession was improperly admitted into evidence because of a claimed failure of the officers to give the complete warning described in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *State v. Taylor,* Me., 343 A.2d 11 (1975) and *State v. Lafferty,* Me., 309 A.

2d 647 (1973), the same argument was raised.

In both cases the argument availed the appellants of nothing.

On this third occasion when the issue is raised, appellant's argument is likewise fruitless.

In *Lafferty,* supra, we took occasion to point out that in the majority opinion in *Miranda* itself, the court said:

" 'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.' " Me., 309 A.2d at 655, citing *Miranda,* supra, 384 U.S. at 478, 86 S.Ct. 1602.

We also quoted the language of the Arkansas court in *Hammond v. State,* 244 Ark. 1113, 428 S.W.2d 639, 645 (1968), as saying:

" 'We do not take Miranda to mean that a man cannot voluntarily open his mouth.' " Me., 309 A.2d at 656.

This latter quotation bore our unqualified approval at the time Lafferty was decided. It still does.

The issue as to the admissibility of a spontaneous confession in the absence of a complete *"Miranda"* warning, and others, are before us as a result of a timely filed appeal.

We deny the appeal.

The story which ultimately led to our denial of this appeal commenced on June 6, 1974. On that night at about 11 p. m. Washburn Police Chief Conrad Parent was roused from his sleep by a caller who informed him that an individual had been observed in the community carrying a rifle. In the course of his investigation, Parent encountered a 1967 Chevrolet backing rapidly out of the driveway of one Marion Sitton. As he approached in his cruiser,

1. Appellant denies the confession was voluntary, a claim to which we will address ourselves later.

the vehicle sped away and Parent pursued it.

After a short, high speed chase, the Chevrolet came to an abrupt stop. The driver emerged from the car, drew a pistol, and stood with it pointed at the windshield of Parent's vehicle. Chief Parent then got out of his patrol car and as he attempted to draw his service revolver he heard a shot and felt something hit him in the right arm. Parent and his assailant stared at each other for a short time before the assailant fled on foot into the surrounding woods.

Working from Chief Parent's description, the police produced a photograph of the appellant, Douglas Farley, and Parent identified the pictured individual as the one who had fired a pistol at him. Eventually, Farley was apprehended in Denver, Colorado, and was flown back to Maine where he was charged with larceny [of the Chevrolet] and armed assault and battery. After a trial before a drawn jury, appellant was found guilty of both the charged offenses.

Appellant's argument consists of three general assignments of error. (1) It was error to deny his motion for acquittal on the charges of grand larceny and armed assault and battery as the evidence presented was insufficient to support a verdict of guilty on either offense. (2) The court below erred in overruling appellant's objection to the introduction into evidence of certain admissions made by appellant while in the custody of police officers. (3) It was error to overrule his objection to the testimony of a witness for the State regarding the appellant's alleged possession of a rifle on the day of the incident in question.

We address first the issue of the admissibility of the appellant's in-custody statements. The admissions were made by appellant as he was being transported back to Maine from Denver, Colorado, by Chief Parent and Dale Pelletier, a Maine State Police officer. At trial, when the State attempted to elicit testimony concerning the admissions, the appellant objected and a hearing was conducted outside the presence of the jury to determine the admissibility of the statements.

Chief Parent testified that during the flight from Chicago to Boston the following dialogue occurred between him and the appellant:

"We got to Chicago and had a short lay-over and then from Chicago to Boston, he was much more relaxed and started to ask if I knew numerous amounts of people in Washburn and if I knew how they were feeling and stuff like this. Then he asked me if I had a brother and I said yes I did and then he started talking about the incident. He asked me what size motor I had in my car because I caught him quite quick and I told him what size engine I had and he asked me how many shots I heard and I said only one. He told me that after he shot the first shot, he ran into the woods and I wasn't sure whether he had went into the woods or behind the car or where, he said he went into the woods and when he went into the woods, he tripped and the gun went off and fired a second shot. He said he watched us during the search that evening and he told me there was no way he was going to come back out in the open with all the weapons that we had at that time. He said he watched us travel through some of the field roads and roads and at any time he could have reached right out and grabbed any of us. We couldn't see him but he could see us at all times."

In response to a question from the assistant district attorney, Chief Parent testified that it was the appellant who initiated the above discussion.

Officer Pelletier testified that when he and Chief Parent arrived in Denver they were taken to see the appellant in his jail cell. Officer Pelletier stated that he iden-

tified himself and Chief Parent as police officers and informed the appellant of his *"Miranda"* rights, except that appellant was not told that he had a right to have an attorney appointed if he could not afford one. Pelletier testified further that during a stopover in the course of the flight back from Denver the next day, he and appellant had the following conversation:

"I had asked Chief Parent if he would go get me some cigarettes. Mr. Farley and myself were sitting at the waiting area at the ramp of Delta Airlines at Logan and after Chief Parent had left, Mr. Farley asked me, 'Is Parent the police officer in Washburn', and I said, 'Yes, he is', and he asked me, he said, 'Was he hit', and I said, 'Yes, he was hit in the arm, it was only a flesh wound', and he said he didn't know he had hit him and he said, 'I have nothing against the man. He has never done anything to me and I didn't mean to harm him.' He said, 'I'm sorry.'"

Appellant took the stand and denied that he was given any *"Miranda"* warnings until after his arrival in Presque Isle. He testified that he did have discussions of a general nature with the two officers but denied making any admissions to either of them.

At the conclusion of the hearing, the trial Justice determined that the appellant's statements were admissible since

". . . the State had satisfactorily sustained its burden of proving beyond a reasonable doubt that these statements were made voluntarily by Mr. Farley and not as a result of police custodial interrogations. Since the Court finds that these statements were made by the Defendant voluntarily and not as a result of . . . custodial interrogations of the Defendant, the issue of the requirement of the Miranda warning does not apply to this case."

Appellant now challenges that conclusion, arguing that even if it were he who

initiated the conversation in question, the circumstances in which the admissions were made—i. e., in the course of a lengthy trip during which he was obliged to sit beside the officer he was accused of having assaulted—make it unlikely that the statements were voluntary beyond a reasonable doubt.

The evidence indicates that far from feeling apprehension and discomfort from the fact he was in the company of two police officers, one of whom he is charged with having shot, appellant was cheerful and talkative during the flight back to Maine from Denver, Colorado.

■ Even if our reading of the record did not force this conclusion on us, under the rules existing in this State our review of the Justice's finding that the statement was voluntary proceeds on the basis that the presiding Justice must be sustained if, in accordance with the correct legal principle specifying the ultimate burden and requisite cogency of proof, there is evidence providing rational support for the conclusion he reached. *State v. Smith,* Me., 277 A.2d 481, 490 (1971).

■ Having carefully examined the transcript of the voluntariness hearing, we find that there was ample evidence to support the conclusion of the trial Justice. *State v. Collins,* Me., 297 A.2d 620 (1972).

■ Appellant's statements were entirely spontaneous and voluntary and were not the product of custodial interrogation either direct or subtle. In such circumstances the requirements of *Miranda* do not obtain. *State v. Taylor,* supra; *State v. Lafferty,* supra. It was proper, therefore, to admit the appellant's statements into evidence despite the fact that appellant had not been given his full *"Miranda"* warnings at the time the statements were uttered.

Next, as to the sufficiency of the evidence, appellant urges that even if the evidence is viewed in the light most favorable to the State, neither the larceny nor

the assault was proved beyond a reasonable doubt. Specifically, appellant points out that (1) there was no evidence that he took the automobile in question; (2) the gun used in the alleged assault was never produced; (3) there was no evidence that a shot had been fired; and (4) there was no medical evidence that Chief Parent had actually been hit by a bullet.

We do not agree.

◼ As we view the record, there was ample evidence to support a conviction on both offenses.[2] The fact of the appellant's recent, exclusive, and unexplained possession of the stolen car permitted the jury to infer that appellant had stolen the vehicle [*State v. James,* Me., 312 A.2d 531 (1973); *State v. Poulin,* Me., 277 A.2d 493 (1971)]; and the testimony of Chief Parent coupled with appellant's admissions were sufficient to establish the assault and battery. Appellant's motions for acquittal were properly denied.

◼ The last issue raised by appellant concerns the testimony of one Henry Myshrall, a witness for the State. Myshrall testified that in the early morning hours of June 6, 1974 [the day of the shooting incident], he looked out his window and observed an individual walking across his lawn carrying a rifle. Myshrall stated that although the individual was walking away from the house and thus had his back to the house, he *"surmised"* that the individual was the appellant, Douglas Farley, since Farley had spent the previous night at his house. Myshrall also stated that at the time he looked outside, he had just heard the door slam as if someone had recently left the premises.

Although his answers were not clear on the point, the jury would have been justified in concluding that Myshrall claimed that a rifle which looked like one carried by the individual on the lawn had been leaning in a corner of his kitchen the night before.

Appellant's present contention is that the witness' testimony was so conjectural it became *"illegal testimony"* and should have been excluded. In our opinion the presiding Justice correctly ruled that the objection which was registered went only to the weight to be accorded the evidence and not to its admissibility.

This is not the first time this Court has been faced with a claim that testimony replete with "I believe" and "it is my impression" and "I think" constitutes "illegal" evidence. *See Humphries v. Parker,* 52 Me. 502 (1864).

It was for the jury to give credence to Myshrall's testimony or disregard it, depending entirely upon their judgment as factfinders as to what weight, if any, ought be accorded it.

They were so instructed.

Such instruction was correct.

The appellant has had a fair trial, free of reversible error.

The entry must be:

Appeal denied.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

---

2. Although the indictment charged the appellant with larceny of property having a value of $1400, the jury's finding was that he was guilty of larceny of property having a value of less than $500.