STATE
*vs.*
ALBERT J. LIBBY

Kennebec.   Opinion, June 7, 1957.

*Robert A. Marden,* for plaintiff.

*Bartolo Siciliano,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WEBBER, J.   On July 24, 1955 an automobile operated by the respondent struck and killed a four year old child. The respondent was subsequently tried by a jury and convicted of the crime of manslaughter. His appeal and exceptions are now before us.

Forty-two separate exceptions were taken in the course of the trial and are recited in the bill of exceptions. Of this

number, twenty-two failed to indicate in what manner the respondent claims to have been aggrieved by the ruling of the court. These exceptions fall into a pattern. A question by the State's attorney was admitted over objection and the witness was permitted to answer. The bill of exceptions furnishes us with the question, the colloquy in some instances, the objection and the exception. In not one of these twenty-two instances are we furnished with the answer given by the witness. For aught that appears in the bill of exceptions the answer may have been innocuous, or favorable to the respondent, or at least harmless. It is true that the bill of exceptions incorporates the report of the evidence by reference, but that does not avoid the necessity of making the bill of exceptions strong enough to stand alone. As was said in *Dennis* v. *Packing Co.*, 113 Me. 159 at 161:

> "It is true in this case, as it was in *McKown* v. *Powers* (86 Me. 291), that the record of the evidence is made a part of the bill of exceptions, but that does not help the matter. It is not a 'summary' bill, as contemplated by statute. It is not an infrequent practice in framing a bill of exceptions to refer to the evidence and make it a part of the bill. This is not improper. The evidence may help to illuminate the exceptions. But neither the statute, nor approved practice, contemplates that a reference in the bill to the body of the evidence, or the incorporation of the evidence as a part of the bill, is to take the place of succinct and summary statement of the specific grounds of exception in the body of the bill itself. In view of the statute and the rule, we do not think it is the duty of the court to hunt through a mass of undigested, and sometimes indigestible, testimony, to find the points of exception, and determine their value."

The practical difficulty is demonstrated by the fact that these twenty-two faulty exceptions are scattered among 579 pages of testimony without any specific suggestion as to where they may be found.

Certain other exceptions are so frivolous or devoid of merit as to require no consideration or comment. We deal only, therefore, with those exceptions which raise alleged errors of law.

### EXCEPTION No. 1

The indictment for manslaughter was in the usual statutory form. The court, upon motion of the respondent, ordered the State to file a bill of particulars "setting forth the unlawful, illegal, wrongful or negligent act or acts then and there being committed by the said respondent which resulted in the wrongful and unlawful death of the said Philip Picard, for which said death the said respondent stands charged." In compliance with this order, the State seasonably filed such a bill of particulars in which was inserted the essential factual background such as time, place and the like, and in which were specific allegations

"that said motor vehicle was mechanically and otherwise unfit to be operated upon the public highway; that said motor vehicle was then and there being operated at an excessive and unlawful rate of speed, and otherwise in an unlawful, illegal, wrongful, negligent and careless manner; that said Albert J. Libby while then and there operating said motor vehicle was then and there under the influence of intoxicating liquor; that all of the foregoing acts then and there illegally committed by the said Albert J. Libby were the proximate cause of the death of Philip Picard."

There were inserted other factual allegations not material here. The respondent then filed a motion for further bill of particulars alleging in essence that the State had failed to advise the respondent as to what particular mechanical defect or defects were complained of, as to what specific excessive and unlawful rate of speed was alleged, and in general setting forth that the bill of particulars was "too broad, vague, indefinite and informal to properly and fully apprise

the said defendant of the nature and cause of the accusation with which he stands charged." This motion was denied and exceptions taken.

We said in *State* v. *Hume,* 146 Me. 129 at 138:

> "We see no merit in this exception. The accused, in a criminal case at common law, is not entitled as a matter of right to a bill of particulars. The reason is that in criminal cases there is directness and particularity in the averments of the indictment, and there is no need, generally for a statement of the matters to be given in evidence to be furnished to the respondent. The court may, however, in its discretion require a bill of particulars to be filed. * * * * The effect of a bill of particulars is to reasonably restrict the proofs to matters set forth in it. The construction placed on a bill of particulars, however, should not be 'too narrow.' It should be 'fairly construed.' * * * * The bill of particulars is not a set of interrogatories, *nor is it employed to compel the state to disclose all its material evidence for conviction.*" (Emphasis supplied)

So here the court saw fit in its discretion to order a bill of particulars filed. That document sufficiently advised the respondent as to the matters which would be put in issue and as to which a defense should be prepared. The respondent could properly ask no more.

## EXCEPTION No. 2

At the close of the State's case, the respondent offered a motion for a mistrial. The grounds asserted were (a) the denial of the motion for a further bill of particulars; (b) the introduction of testimony that the respondent was intoxicated at the time of the alleged crime; and (c) the introduction of testimony by the investigating officers of alleged admissions and statements made by the respondent at the scene of the accident. The rules governing this exception are too well known to require amplification or citation. Mis-

trial is ordered only in those rare cases where the trial cannot proceed further with the expectation of a fair result. The ordering of a mistrial is within the sound discretion of the presiding justice and exception lies only to an abuse of the discretion. Nothing even remotely resembling such a situation is presented here.

## EXCEPTIONS No. 3, 4, 5, 6, 7, 8, 9

At the close of all the testimony, the respondent addressed to the court several motions for directed verdicts of not guilty, all of which were denied, and exceptions were taken. As all of the same issues are raised on appeal and will be hereinafter discussed in connection therewith, it is unnecessary to consider them here.

## EXCEPTION No. 15

Testimony was introduced that the respondent at his own request permitted a doctor at the scene of the accident to take a blood sample from his arm to be used for analysis. The witness described the taking of the sample. After this testimony had been given without objection, counsel for the respondent moved that the last answer be stricken on the ground that it had not then appeared that the respondent had been advised of his constitutional rights and guarantees or informed that he was charged with any crime. The motion was denied and exception was taken. It is enough to say that the respondent was entitled to a reasonable opportunity to have the blood sample taken if he so desired and if he believed the evidence might be of value to him in event any criminal charge might later be laid against him. There was certainly no error in permitting an eye witness to describe the making of the request by the respondent and the taking of the blood sample pursuant to that request. Neither the right against self-incrimination nor any other constitutional right was involved in the situation there presented. On the contrary, the evidence was a proper pre-

liminary to the subsequent admission of the result of analysis of the blood sample which disclosed a percentage of alcohol substantially higher than that required by statute to constitute prima facie evidence that respondent was then under the influence of intoxicating liquor. R. S. 1954, Chap. 22, Sec. 150.

## EXCEPTIONS NO. 18 AND 19

Testimony was admitted which reflected the opinion of the witness as to the condition of the respondent as to sobriety immediately after the fatal accident. Although it is not entirely clear as to how the respondent asserts he was aggrieved by the admission of this testimony in the form in which it was given, we gather that his basic contention is that a non-expert witness may state his opinion that one was intoxicated, but may not state his opinion that one was under the influence of intoxicating liquor. We have not heretofore recognized such a distinction. See *State* v. *Hamilton,* 149 Me. 218. Unfortunately, the results of overindulgence in the use of alcoholic beverages are of such common knowledge, and the manifestations of some degree of excessive drinking so frequent, that we need not be doctors or psychiatrists to form a rational opinion as to whether another is exhibiting the adverse influence of intoxicating liquor or is in fact drunk. Experience shows that juries are aided rather than hindered by hearing the opinions of eye witnesses before reaching a final and decisive conclusion as to whether a respondent was sober or under the influence or drunk. These are the factors which make the evidence admissible. The weight to be given to the opinion of the witness by the jury will depend upon the usual factors such as opportunity of the witness to observe, his demeanor, bias, interest, and the like. A presiding justice commits no error in permitting a police officer who observed the respondent at the scene of the accident to state his opinion that the respondent was then under the influence of intoxicating liquor.

## EXCEPTION 26

A witness with special knowledge, training, and experience in the field of blood sample analysis and the effect of alcohol in the body was permitted to testify that a chemical analysis which he performed of the blood sample taken from the body of the respondent disclosed .206% by weight of alcohol in the blood; that any individual with that alcohol level in his blood would be definitely under the influence of intoxicating liquor; and that he considered that at the level .15%, any individual is definitely under the influence of intoxicating liquor regardless of his stature, weight, height, or any other condition. At the close of this testimony, respondent's counsel moved that all of it having "reference to the effect on any given individual of any given amount of alcohol" be stricken on the ground that the witness was not qualified to give that opinion. Motion to strike was denied.

Whether an expert witness is qualified is a preliminary question to be determined by the presiding justice. His decision is conclusive unless it clearly appears that the evidence was not justified, or that it was based upon some error in law. *Hunter* v. *Totman,* 146 Me. 259, 268. The record before us discloses that the expert clearly possessed special skill and experience and a knowledge of the results of technical research in his field. The opinion expressed was within the scope of the stated qualifications.

## EXCEPTION No. 32

Testimony of an automobile mechanic with many years of experience was given with relation to the mechanical condition of the respondent's car. Objection was offered solely on the ground of insufficient qualifications. Under applicable rules already stated, the preliminary question was correctly decided by the presiding justice. Furthermore, the respondent fails to show prejudice where questions and answers related wholly to the mechanical condi-

tion of the automobile in view of the special verdict by the jury which expressly based a finding of guilt on other grounds adequately supported by credible evidence.

## EXCEPTIONS NO. 39 AND 40

On direct examination the respondent was asked:

"Q. Were you in full control of your car at all times up until the moment you made that turn to the left?"

"A. I was."

On motion, this answer was stricken. The witness was declaring his judgment and conclusion on an issue to be decided by the jury, and his answer was given in response to a question which tended to suggest the expected answer. During his examination the witness was afforded an opportunity to relate every essential fact from which the jury might determine for itself whether or not the respondent was in full control of his vehicle. There was no error in preventing the witness from judging that issue. The same rule governs exception 40.

## EXCEPTION NO. 42

At the completion of the charge to the jury the presiding justice was requested by the respondent's counsel to give the following instruction:

"Such negligence (gross and culpable) must be proved as well as the fact that the death was the direct result of such negligence."

It is unnecessary to consider this exception in view of the fact that if any error arose from the refusal to give the instruction in the form requested, such error was effectively cured by the special verdicts which specifically base conviction upon the violation of certain statutes, which violations the jury, guided by proper instructions as to the applicable law, deemed to be the proximate cause of the fatal accident.

## OTHER EXCEPTIONS

Certain other exceptions, although not presented in proper form for consideration, appear to rest on erroneous legal theory which may be discussed briefly in general terms.

Respondent's counsel sought repeatedly to exclude testimony of police officers as to facts observed by them at the scene of the accident and their conversations with the respondent which included his account of the accident, and further related to his operation of his motor vehicle and his condition as to sobriety. The theory upon which exclusion apparently was sought rested upon counsel's interpretation of the statute dealing with the reporting of highway accidents. R. S. 1954, Chap. 15, Sec. 7 as amended by P. L. 1955, Chap. 306, makes provision for the preparation and filing of accident reports by the investigating officers and by the operators of the vehicles involved, and contains the following relevant provisions:

> "The driver of any vehicle involved in an accident resulting in injuries to or death of any person or property damage to the estimated amount of $100 or more, or some person acting for him, or the owner of said vehicle having knowledge of the accident should the operator of same be unknown, shall, immediately by the quickest means of communication, give *notice* of the accident either to a state police officer, sheriff or other police official, or to the police department of the municipality wherein the accident occurred. * * * Every such *notice* received by any such official or department shall be promptly investigated.
>
> Every law enforcement officer who investigates a motor vehicle accident of which report is required, shall, either at the time and scene of the accident or elsewhere, interview participants and witnesses and shall, within 48 hours after completing the investigation, transmit his *written report* to the chief of the state police.

All accident *reports* made by investigating officers
shall be for the purpose of a statistical analysis
and for accident prevention purposes and shall not
be admissible in evidence in any trial, civil or crim-
inal, arising out of such accident, * * * *.

The driver of any vehicle involved in an accident
resulting in injury to or death of any person or
property damage to the estimated amount of $100
or more, or some person acting for him, shall,
within 48 hours after the accident, make a *written
report* of it to the chief of the state police. The
chief may require drivers of vehicles involved in
any such accident to *file* supplemental *reports*
whenever the original *report* is insufficient in the
opinion of the chief.

Such *report* shall be without prejudice and the fact
that it was made shall be admissible in evidence
solely to prove a compliance with this section. No
*report,* or any part thereof, or statement contained
therein, or statement made, or testimony taken at
any hearing before the secretary of state or any
of his deputies * * * shall be admissible in evidence
for any purpose in any trial, civil or criminal,
arising out of such accident." (Emphasis sup-
plied)

It will be noted that the first requirement is that of notice
of the accident, that is, the imparting of information that
such an accident has occurred. Such notice may be, and
usually would be, oral. It is contemplated that notification
that an accident has occurred will be followed by investiga-
tion, the assembling of details, and subsequent written re-
ports. The written reports required by the statute are by its
terms rendered inadmissible in any proceeding except to
prove compliance with the statute itself. It was never in-
tended that the statute should preclude the giving of testi-
mony by police officers or others covering observations and
conversations which would otherwise be admissible under
well established rules of law. *Lawyerson* v. *Nadeau,* 136 Me.
361. We can see that the driver of a vehicle involved in an

accident might and doubtless should be protected as to oral statements made in the course of and as a part of the preparation of the written report required of him by statute. One cannot be permitted to do by indirection what he is forbidden to do directly. But the evidence offered and admitted here was not of that nature. Under these circumstances the statute affords him no protection. The theory that the statute precludes officers from giving oral testimony as to facts observed and voluntary statements made by respondent during the ordinary process of investigation would, if adopted, render it nearly impossible to obtain convictions in cases which involved violations of highway safety statutes. The Legislature has merely sought to insure the making of the desired written reports by providing for the exclusion of such reports from evidence.

## APPEAL

The jury could find upon the evidence presented that the respondent was operating his car proceeding toward his home. As he came over the crest of a hill he overtook the decedent, a child four years old, and his older brother walking along the roadway. While the respondent's car was still some distance in the rear of the two boys, the decedent left his brother and ran to the right shoulder of the road. The respondent veered to the right and proceeded for approximately seventy-five feet with his two right hand wheels in the grass on the right hand shoulder, after which he veered to the left, crossed to the left hand ditch, traveling in an arc, and came to rest with his car overturned. While his car was proceeding on this course it struck the decedent with such force as to kill him instantly and to throw his body some distance. A short time after the accident occurred a doctor who had been called to the scene of the accident took a blood sample from the respondent's arm at his request which, upon analysis, was shown to contain .206% by weight of alcohol in the blood. Witnesses on the scene immediately after

the accident observed the odor of alcohol on the respondent's breath and observed other symptoms from which they formed and expressed the opinion that he was under the influence of intoxicating liquor. There was evidence that before the blood sample was taken the doctor sponged and cleaned certain cuts and superficial abrasions on the respondent's body with alcohol swabs. There was evidence from expert witnesses as to the amount of alcohol which might reasonably be expected to find its way into the blood stream as a result of this treatment. In addition, there was some testimony by way of conjecture and surmise as to the possibility of the presence of vestigial alcohol moisture in the syringe used to take the blood sample. Expert testimony was given as to the normal rate of absorption of alcohol into the blood stream and the probable rate of evaporation of alcohol in the form of moisture in a syringe. From all of this testimony, the jury could reasonably conclude that the respondent was concealing the truth when he denied that he had had anything to drink in the nature of an alcoholic beverage, and that in fact he had imbibed alcoholic beverages in sufficient quantity to render him well under the influence of intoxicating liquor. On the basis of testimony as to the speed of the respondent's vehicle, the distance it traveled before coming violently to a stop completely overturned, its erratic course, the position of the decedent off the traveled portion of the highway, and the respondent's apparent failure or inability to stop his car or sound his horn or reduce his speed or safely steer the vehicle past the decedent, the jury could justifiably conclude that the death of the decedent resulted directly from the fact that the respondent was then and there operating his vehicle while under the influence of intoxicating liquor. The jury under proper instructions was requested to return special verdicts if they should find the respondent guilty, which verdicts would indicate specifically whether or not they found that death was proximately caused by respondent's operation of a me-

chanically unfit motor vehicle, or by his operation of the vehicle at an excessive and unlawful rate of speed, or by his operation of the vehicle while under the influence of intoxicating liquor. By their special verdicts the jury indicated that they found the respondent guilty on the basis of all three of these charges. It becomes unnecessary to review the evidence with relation to the mechanical condition of the car and especially its brakes, or with relation to the speed at which the vehicle was traveling, in view of the fact that the evidence amply supports the finding of operation under the influence. The operation of a motor vehicle while under the influence of intoxicating liquor is made unlawful by statute and is denominated *malum prohibitum*. When such an unlawful act is shown beyond a reasonable doubt to be the proximate cause of a homicide, the result is manslaughter. *State* v. *Hamilton, supra; State* v. *Budge,* 126 Me. 223. The evidence was in many respects conflicting, but there was credible evidence which, if believed, resolved every reasonable doubt and supported a finding of guilt. We cannot say upon this record that the jury erred in accepting that evidence as representative of the truth. The motion for a new trial must be denied. The entry will be

*Exceptions overruled. Appeal denied. Judgment for the State.*