STATE OF MAINE
*vs.*
RICHARD W. ROWE

York.   Opinion, May 27, 1960.

Released for publication August 25, 1960.

*Marcel J. Viger, County Attorney,* for State.

*Casper Tevanian,*
*Richard H. Broderick,*
*David K. Marshall,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. SIDDALL, J., did not sit.

WEBBER, J. On appeal and exceptions. The respondent, a practicing attorney, was employed by one Martel, the complainant, in connection with alleged income tax deficiencies. At the outset, the respondent received from his client $100 as a "retainer." On the same day, Martel gave him a further sum of $350 which, by the terms of the receipt therefor, was "In re compromise settlement proposed w/U. S. Treasury." At this time the claim of the Government for unpaid taxes, penalties and interest, as stipulated by the State's attorney, exceeded $4,000, and both lawyer and client entertained the hope that a satisfactory compromise adjustment might be effected. About nine months later the respondent received a further sum of $1150 from Martel and furnished a receipt indicating that the payment comprised "Monies held re: tax settlement U. S. v. Martel." No settlement having been consummated, the matter was set for hearing in the U. S. Tax Court and to defray the anticipated cost of travel to Boston, the respondent drew upon his client for an additional $50. On February 25, 1956 the respondent expressed the need for more funds to compromise and satisfy the claims of the Government. Thereupon the complainant gave the respondent the sum of $1250 "to pay the income tax in Boston." The final decision of the Tax Court, after hearing, produced an award of $199.52, which Martel later paid to the Government out of his own funds.

The jury could properly conclude that the complainant is obviously uneducated, handicapped by an inadequate understanding of the English language, and unable to fully comprehend the nature of the negotiations and proceedings involving alleged tax deficiencies. The jury could find that he relied entirely upon the representations and good faith of his attorney-trustee.

The respondent elected not to offer himself as a witness. The evidence presented by the State was never seriously disputed. It fully justified a finding that the respondent received from the complainant the sum of $1250 (the only sum here in issue) upon an express trust to use that money to compromise the claim of the Government; that no money whatever was ever paid by the respondent to the Government or returned by him to the complainant, but said sum was retained and converted to his own use. Thus the evidence fully supported a conviction for embezzlement of these trust funds. There is therefore no merit either to the respondent's appeal or to his exception to the denial of a directed verdict. (Exception #4.)

The respondent's first and second exceptions raise no issue of law and cannot be considered. The rule has been so often stated as to require no citation of authority that a bill of exceptions must in clear and understandable form set forth the alleged error of the court and indicate in what manner the party is prejudiced thereby. The District Director of Internal Revenue was presented by the State to prove that the respondent had not at any time turned over any money to the Government on behalf of the complainant. The court denied the respondent the right to have the entire confidential file of the Government bearing on the income tax matters of the complainant produced by this witness in court. The court further refused to compel the witness to testify concerning exhibits which were subsequently excluded from evidence. The bill of exceptions fails to inform us as to what the contents of the file or the exhibits might have tended to prove or how the respondent was prejudiced by the rulings of the court. The exhibits are not reproduced in the record and were not included in any offer of proof. The exceptions cannot stand alone and furnish no vehicle for an intelligent review.

We are satisfied, however, that the respondent has lost no rights through the inadequacy of these exceptions for we gather from the nature of the oral and the written argument that all that the respondent sought or hoped to prove through the excluded material was that the original demands of the Government against the complainant were substantial. The respondent seems to entertain the novel theory that if an attorney accepts funds upon the express trust that they be used to settle a claim and, as a result of his efforts, the claim is substantially reduced, he is later justified in retaining the trust funds in the guise of attorney's fees. Such is not the law. It was open to the respondent here to offer evidence that the funds came to him as fees and not in trust, or that by some later authority from, or agreement with, the complainant, he was given the right to retain the funds as fees, but no such evidence was offered in this case nor was there any evidence of the fair and reasonable value of any services the respondent rendered. One witness for the respondent touched upon the factual issue of lawful conversion of trust funds to fees. The jury may have quite justifiably doubted the credibility of this witness and disbelieved his testimony. But even if his version of an alleged conversation between the respondent and the complainant were fully accepted, still the testimony fell far short of evidencing that authority, consent or agreement by the complainant so necessary to the justification of a conversion of trust funds. The witness merely described an alleged summary announcement by the respondent to the complainant that henceforth funds already in respondent's hands would be regarded as fees. A trustee may not properly thus impose his will upon the one to whom he owes the trust obligation. Nor could the respondent unilaterally and arbitrarily convert trust funds to attorney's fees and justify his conduct by a claim that his efforts had ultimately produced a favorable result for his client.

Moreover, if the size of the original claim by the Government was in any way material, the respondent required no further proof of it in any event. The fact was never in issue and was, as already noted, stipulated by the prosecuting attorney. It was made abundantly clear to the jury by the evidence of nearly every witness, entirely uncontradicted, that the original claim was substantial and in fact exceeded $4,000. There is no suggestion that the excluded evidence would have done more than to further corroborate and establish an undisputed fact.

The third exception relates to the refusal of the presiding justice to order a mistrial. The events which prompted the motion were closely associated with those touched upon above in connection with the first and second exceptions. The direct examination of the District Director of Internal Revenue was brief and was confined to proof that the amount finally determined to be due from the taxpayer was $199.52, that no part of this sum was ever paid by the respondent, but that this sum was ultimately paid in full by an attorney (other than the respondent) acting for the taxpayer. These facts are obviously not disputed by the respondent. When upon cross-examination the respondent sought to compel the witness to divulge the contents of the Government's file relating to the taxpayer, the witness claimed privilege, respectfully declined to answer, and produced a telegram from the U. S. Commissioner of Internal Revenue as follows:

> "Letter dated April 28, 1958 from York County Attorney Marcel Viger requests testimony May 6, 1958 deadline in State v. Richard W. Rowe that Mr. Rowe never turned over $2500.00 in settlement of tax case of Octave Martel, Biddeford, which was settled in 1956 for $199.52. Permission granted you to furnish statement certifying you are custodian of records containing information statement, and, if such is the case, that no money turned over to Service—that means Internal Rev-

enue Service—by Mr. Rowe in settlement of Martel's tax case, Tax Court Docket No. 51812, December 22, 1956. Signed, Russell C. Harrington, Commissioner."

The court, as we have seen, granted the privilege and the respondent moved for mistrial. In his supporting statement, respondent's attorney treated the court's ruling as a total and prejudicial denial of the right of cross-examination. In specifying the adverse effect of the alleged deprivation, however, he asserted only that the effect of the testimony already given by the witness would be to create in the mind of the jury the false impression that $199.52 was the most the Government ever claimed against the taxpayer. As already noted, no such misconception could possibly have existed in the light of all the evidence. Moreover, immediately *after* the denial of the motion for mistrial, the respondent's counsel was permitted to resume cross-examination of the Director who, without claiming privilege, again reaffirmed his previous testimony that the original claim before Tax Court adjudication was in excess of $4,000. As long as the approximate amount was known and was admittedly substantial, the exact amount of it was obviously immaterial upon any theory of this case.

Congress has by statute provided penalties to be imposed on any official who divulges a confidential matter in the Government files of an income tax payer. It is obvious that sound public policy makes necessary full protection of the confidential disclosures of such a tax payer. In an appropriate case we may have occasion to consider whether federal statutes have created a privilege or a prohibition, whether or to what extent the privilege, if it be one, may be waived by the Government and whether the ability of the State to prosecute a crime successfully must sometimes yield to this privilege. Such an examination is not required on the facts of this case. As stated in 58 Am. Jur. 368, Sec. 673: "However, the refusal to permit a question on

cross-examination is not ground for reversal if not prejudicial, or if prejudice does not appear, as where the information sought to be elicited is covered by further testimony of the witness." The rule has even more forceful application where, as here, the same information was elicited from nearly all the witnesses and was never in dispute. "Mistrial is ordered only in those rare cases where the trial cannot proceed further with the expectation of a fair result." *State* v. *Libby,* 153 Me. 1, 5; *State* v. *Woods,* 154 Me. 102, 105. The respondent was at no time prevented by the claim of privilege by the witness from presenting evidence either by cross-examination or otherwise in support of any of the three defenses available to him: (1) That the funds were never given and received in trust; or (2) that the trust was fully executed and the funds were transmitted to the Government or returned to the complainant; or (3) that the complainant authorized or consented to the retention of the funds as fees fairly earned by the respondent. The presiding justice in refusing to order mistrial was entirely justified in concluding that the claim of privilege had in no way hampered the respondent in making his defense and there was no occasion to halt the trial. This exception must be overruled.

The entry will be

> *Appeal denied. Exceptions 1 and 2 dismissed. Exceptions 3 and 4 overruled. Judgment for the State.*