STATE of Maine

v.

George D. CAPITAN.

Supreme Judicial Court of Maine.

Aug. 31, 1976.

Thomas E. Delahanty, II, Dist. Atty., R. Barrie Michelsen, Asst. Dist. Atty., Auburn, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Although *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was decided over ten years ago, our court and federal courts including the Supreme Court of the United States [see *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L. Ed.2d 313 (1975) and federal and state cases cited therein], are still concerned with interpreting the intended full sweep of the rule of that case.

As recently as two months ago we were presented a claim which compelled a *Miranda* interpretation for its resolution. *State v. Farley,* Me., 358 A.2d 516 (1976). Now again for the fourth time since 1973 *Miranda* is assigned as the reason why we should set aside a criminal conviction.

This appeal arises from a judgment entered upon a guilty verdict following a jury trial on an information in which appellant was charged with breaking, entering, and larceny (17 M.R.S.A. § 2103).

The conviction was based largely on certain admissions made by the appellant to police officers shortly after he was arrested. Objections to permitting these admissions to be received in evidence were properly raised at trial. This timely appeal followed entry of judgment.

We deny the appeal.

Before us, the appellant raises three issues. The first two relate to claim of error in permitting the admissions to be received in evidence.

Appellant concedes that full warnings preceded both statements, the admissibility of which he now challenges. The challenge here made is premised on the claim that (1) the State failed to prove that the admissions were voluntarily made and (2) the second statement was made after appellant had requested an attorney but before he had been provided with one. The claim is made that this uncontroverted fact establishes that the appellant's rights were not *"scrupulously honored"* as required by *Miranda v. Arizona,* supra, 384 U.S. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. *See also Michigan v. Mosley,* supra.

In *State v. Collins,* Me., 297 A.2d 620 (1972), we ruled that before a confession or admission may be received in evidence, the court must determine by evidence convincing in its effect beyond a reasonable doubt that such confession or admission was voluntary.

Consistent with the long-established rule in Maine[1] the presiding justice held a hearing outside the presence of the jury and concluded as follows:

"I find from the totality of the circumstances in this case that the police officers exercised proper police practice, did not in any way, psychologically or physically, intimidate this individual. I have had an opportunity to hear him right here from the witness stand and appraise his demeanor, evaluate his intelligence as he answered questions of both police officers and counsel, and it is the Court's opinion that he was not suffering from that degree of diminished capacity which would taint the voluntary character of his statements. . . . I do not find the position of the defense to be supported by the evidence in this case. Accordingly, the statements will be admitted."

As we recently pointed out in *Farley,* supra,

---

1. *See State v. Merrow,* 161 Me. 111, 208 A.2d 659 (1965).

"under the rules existing in this State our review of the Justice's finding that the statement was voluntary proceeds on the basis that the presiding Justice must be sustained if, in accordance with the correct legal principle specifying the ultimate burden and requisite cogency of proof, there is evidence providing rational support for the conclusion he reached." 358 A.2d at 519.

■ We find in this case there is evidence providing rational support for the conclusion of the justice below that the statements were voluntarily made.

No further discussion of the first issue the appellant raises is warranted.

■ The evidence establishes that after the appellant was arrested and brought to the police station, he was given a full *"Miranda"* warning. After a few questions were asked and answers given, the police detective informed appellant that his [appellant's] fingerprints were found on an envelope inside the apartment alleged to have been broken into. Appellant explained to the detective that he was a house-to-house sales representative and that he had *"probably been into this house and handled this envelope."* At that point he said, *"I'll speak to my lawyer."* All questioning ceased and appellant went to bed.[2]

The next morning at about 9 a.m. another detective was passing near appellant's cell when appellant said to him, *"Hey, I want to talk to you."*

The detective then approached appellant's cell and asked him if he had received a *"Miranda"* warning. Appellant replied that he had. The detective then repeated the full *"Miranda"* warning. The appellant then made the admissions with which we are presently concerned.[3]

*Miranda v. Arizona,* supra, described in detail the procedures to be followed if a person in custody asks to consult with a lawyer.

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to the police, they must respect his decision to remain silent.

"This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time." *Id.,* 384 U.S. at 474, 86 S.Ct. at 1628.

In *Michigan v. Mosley,* supra, the Supreme Court was concerned with a situation in which the person being questioned had stated he wished to remain silent. In that case the Court premised its conclusion that the Mosley confession was properly received in evidence on the basis that the critical safeguard identified in *Miranda v. Arizona,* supra, was the accused's *"right to cut off questioning."*

---

**2.** All this occurred at about 2 a. m.

**3.** The record is somewhat confusing as it concerns the basis for appellant's objection to the evidence of admissions, to which objections were made in the trial court. We treat the issue now urged before us, i. e., that the admissions made in the morning were made in violation of the rule in *Miranda v. Arizona,* supra, as an error claimed below.

Mr. Justice Stewart, writing for the majority of the *Mosley* court, then continued:

"We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' *was* 'scrupulously honored.'"[4] *Michigan v. Mosley,* supra, 423 U.S. at 104, 96 S.Ct. at 326.

In this case we are completely satisfied that the police *"scrupulously honored"* appellant's *"right to cut off questioning."* Questioning was resumed only when appellant expressly requested opportunity to speak to the detective. To us, this certainly constituted a recanting of his previously expressed desire to have the advice of counsel before any further interrogation was conducted and the complete knowing and intelligibly made waiver of his right to have counsel present. We conclude that the rationale of *Michigan v. Mosley,* supra, applies, even though *Mosley* was concerned with a waiver of a right to remain silent.

The admissions made by this appellant were properly received in evidence.[5]

The third issue raised by appellant is that the district attorney was permitted to make a recommendation to the court as to the sentence which was to be imposed. This, says appellant, was error.

Appellant cites the ABA Standards Relating to Sentencing Alternatives and Procedures, § 5.3(c), as authority for his claim that there was impropriety in permitting

the district attorney to make a specific recommendation as to sentence. Because of this claimed error, he says the case should be remanded to the Superior Court for re-sentencing.

We do not agree that this suggested result should obtain even if it were improper for the district attorney to make a specific recommendation.

It is clear from the record the appellant made objection at the time the district attorney commenced to make the recommendation.

We therefore treat the claimed error as saved.

We conclude, however, there was no error.

We turn first to the question of whether the claimed error is one which is reviewable on direct appeal.

In *State v. Carver,* Me., 330 A.2d 785 (1975) we had occasion to point out that the Supreme Judicial Court, sitting as the Law Court, has no jurisdiction to review sentence except to the extent that there may be involved in the appeal a claim that an illegal sentence was imposed. We interpret the appellant's claim now before us to be that the sentence imposed was illegal because the district attorney was permitted to make a specific recommendation as to sentence.

The issue raised is one of law which can be decided on the basis of the record before us. We therefore see no bar to a

---

4. *See* concurring opinion of Mr. Justice White. In note 2 of that concurring opinion, he writes:

"The question of the proper procedure following expression by an individual of his desire to consult counsel is not presented in this case. It is sufficient to note that the reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then com-

municate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Michigan v. Mosley,* supra, 423 U.S. at 110, n. 2, 96 S.Ct. at 329 (concurring opinion).

5. *See People v. Morgan,* 19 Cr.L. 2323 (7/21/76).

consideration of the issue raised because it is raised in a direct appeal rather than in a post-conviction habeas corpus proceeding. *Cf. Dow v. State,* Me., 275 A.2d 815 (1971).

 Except in unusual circumstances a prosecutor should not be permitted to make specific sentencing recommendations.

Sentencing responsibility is vested in the trial judge.

 Within the statutory limitations, the sentencing authority is required to exercise broad discretion. Many of the factors which should influence his exercise of discretion are inappropriate for consideration by a prosecutor. Specific sentencing recommendations, particularly if attended by publicity, can, in some cases, put the sentencing authority under unwarranted and unfair pressures. Systematic specific recommendations by the prosecutor have a tendency to induce too much reliance on them by the court.[6]

It is precisely these considerations which prompted the Advisory Committee of the American Bar Association Project on Minimum Standards for Criminal Justice to recommend as a standard that

"[a]lthough there will be occasions when sentencing recommendations by the prosecutor are appropriate, the prosecutor ordinarily should not make any specific recommendations as to the appropriate sentence." *ABA Standards Relating to Sentencing Alternatives and Procedures,* § 5.3.(c) (Approved Draft 1968)

 In the instant case the presiding justice asked for a recommendation from the prosecutor. Even if he had not done so and the prosecutor had made the recommendation without being asked, we certain-

ly would not say that that fact per se would compel us to remand for a resentence.

We find neither impropriety nor legal error in the sentencing procedure adopted in this case.

The entry must be:

Appeal denied.

DELAHANTY, J., did not sit.

---

6. Where, as part of the negotiations leading to a plea, a prosecutor has committed himself to the defendant to make a specific recommendation to the sentencing court, he, of course, must keep his bargain and make a specific recommendation on the record.

There may well be situations where there is possibility of a special disposition uniquely applicable to a particular defendant. In such case, a specific recommendation by the prosecutor is appropriate.