**STATE of Maine**

v.

**Wayne Edward SMALL.**

Supreme Judicial Court of Maine.

Feb. 27, 1980.

David W. Crook (orally), Dist. Atty., J. Michael Talbot, Asst. Dist. Atty., Skowhegan, for plaintiff.

Sherman & Ringer, Robert J. Ringer, Jr., Waterville (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Defendant appeals from his conviction in the Superior Court, Somerset County, on three counts of arson "with the intent . . . to collect insurance proceeds," 17–A M.R. S.A. § 802(1)(B)(1).[1] He asserts error in three evidentiary rulings made at trial and challenges the legality of the sentencing proceedings. We deny the appeal.

The jury could have found from the evidence that defendant had agreed to pay $2,000 to one Robert Garland to set fire to defendant's trailer home in North Anson, along with an automobile and a skidder used in his logging operation, at a time when defendant and his family were away on vacation in April, 1977. Defendant had been having considerable financial trouble and had insured the trailer, car, and skidder for more than they were worth. Prior to leaving for his vacation, defendant had removed from his trailer home several valuable items, such as a CB radio and other electronic equipment, placing them in boxes that he took to the home of Ray Strickland in New Portland. Defendant left with Strickland his late model pickup truck and asked him to look after the boxes. At some point he also told Strickland that he was going to have "another smudge sale."

Robert Garland set fire to defendant's trailer home as agreed but never received a cent from defendant for his efforts. Garland ultimately admitted his involvement to fire inspectors and was given immunity from prosecution in return for his testimony against defendant. In defense, Small blamed the fire entirely on Garland. Small testified that he had owed Garland several thousands of dollars over a period of ten or

---

1. The statute provides:
  § 802. Arson
   1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;

  . . . . .

  B. On his own property or the property of another
   (1) with the intent to enable any person to collect insurance proceeds for the loss caused by the fire or explosion . . . .

more years and that Garland had continually asked to be repaid, making threats to defendant, personally and through others, that he would have defendant killed.

## I.

■ Defendant's first claim of error relates to a statement made by defendant when he had returned to Strickland's home after the fire to remove the boxes he had left there before the fire. During Strickland's direct testimony, the following was elicited:

Q And did he get those possessions?
A Yes.
Q Did he tell you anything about them?
A He says he wanted to get rid of them.
Q Did he tell you why he wanted to get rid of them?

Over objection, Strickland was permitted to answer:

A He said: Maybe the inspector would be up there with a warrant.

Defendant argues that the jury could infer from that evidence that the items were stolen and that he was a thief; and thus the statement should have been excluded as unfairly prejudicial. *See* M.R.Evid. 403.

The statement was offered for the obvious inference as to defendant's state of mind, *i. e.*, his apprehension that the fire inspector would be searching for personal items that defendant had removed in anticipation of the fire, thus tending to show defendant's consciousness of guilt. Such evidence was not only relevant,[2] *State v. Caliendo*, 136 Me. 169, 4 A.2d 837 (1939), but highly probative, *see State v. Blouin*, Me., 384 A.2d 702, 706 (1978), and the rather slim possibility that the jury in an arson trial might draw the larcenous inference now suggested by defendant does not convince us that the presiding justice abused his discretion in admitting the statement. *See, e.*

*g., State v. Doughty*, Me., 399 A.2d 1319, 1323 (1979).

## II.

■ Defendant also challenges the admission of Strickland's testimony as to the meaning of the phrase "smudge sale" used by defendant prior to the fire in referring to events that might occur at his trailer home. Over defense counsel's objection Strickland was permitted to testify to the fact that the term "smudge sale" as used in his circle means "fire sale" and "burning for insurance." We find no error in the admission of this evidence. Its admission is authorized by M.R.Evid. 702. That rule, which is entitled "Testimony by Experts," provides:

If . . . specialized knowledge will assist the trier of fact to understand the evidence . . . , a witness qualified as an expert by knowledge . . . [or] experience . . . may testify thereto in the form of an opinion or otherwise.

■ The determination of preliminary facts concerning admissibility are for the presiding justice, M.R.Evid. 104(a), and his judgment will be sustained unless there is an abuse of discretion or error of law. *E. g., Gosselin v. Better Homes, Inc.*, Me., 256 A.2d 629 (1969). In the case at bar the two preliminary questions for the court's determination were: (1) whether Strickland's testimony involved "specialized knowledge" that would "assist the trier of fact to understand the evidence" and (2) whether Strickland was qualified to testify to the meaning of the term "smudge sale." *See* Field & Murray, *Maine Evidence* § 702.1 (1976). Questioning by the court established that "smudge sale" is "a common slang term" that is "used around the community in which [Strickland] operate[s]." The presid-

---

**2.** The erroneously admitted evidence in *State v. Leathers*, Me., 407 A.2d 15 (1979), was entirely different from defendant's statement in the case at bar. In *Leathers* the prosecution offered evidence that the defendant had exaggerated the values of certain items admittedly lost in the fire; this court held that such evidence had no relevance whatever to any of the facts

constituting the essential elements of arson and, more particularly, the element of "intent [in setting the fire] . . . to collect insurance proceeds." *See* 17–A M.R.S.A. § 802(1)(B)(1). By contrast, defendant's statement here was directly probative of his consciousness of guilt in causing the fire.

ing justice could properly have concluded that a slang term current within at least one segment of the North Anson community was not commonly understood by a jury composed of people from all walks of life and from all parts of Somerset County. The justice had a sound basis for concluding that the meaning of "smudge sale" in defendant's community was a fact of "specialized knowledge" within the meaning of Rule 702 and was therefore a proper subject for expert testimony. *See Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974) (cryptic slang expressions); *People v. Irvine*, 40 App.Div.2d 560, 334 N.Y.S.2d 502 (1972) (street language); *Coverson v. State*, 27 Ohio App. 166, 161 N.E. 221 (1927) (meaning of phrase "I am the law" among blacks). *Cf. United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979) (gambling jargon); *United States v. Alfonso*, 552 F.2d 605, 618 (5th Cir. 1977) (same); *United States v. Borrone-Iglar*, 468 F.2d 419, 421 (2d Cir. 1972) (narcotics jargon). The justice could also have properly concluded that Strickland, being familiar with the use of that phrase in the particular community in which he and defendant "operated," was well qualified to testify to the fact of what defendant's statement objectively meant to a hearer in that community. *See State v. Libby*, 153 Me. 1, 8–9, 133 A.2d 877, 881–82 (1957). *Cf. State v. Bennett*, 158 Me. 109, 114–15, 179 A.2d 812, 815 (1962) (translator of Morse Code).

█ Concededly Strickland did not fit into the mold of the usual expert witness, such as a medical doctor or an engineer, testifying as to his scientific or technical knowledge or as to his opinion based thereon. However, the expert testimony admissible under Rule 702 is not restricted to evidence on scientific and technical subjects. It also contemplates "expert" testimony on any other subject of "specialized knowledge," that is, information on any subject that is beyond the everyday knowledge of the general citizenry. When specialized knowledge, such as, for example, the meaning of slang phrases or words used by criminal elements engaged in gambling or narcotics, becomes relevant to "assist the

trier of fact to understand the evidence," anyone who is "qualified . . . by knowledge . . . [or] experience" to testify on that specialized question becomes by definition an expert for that purpose. *See* Advisory Committee's Note on Rule 702, F.R.Evid. (identical to M.R.Evid. 702), 28 U.S.C.A. at 463 (1975), quoting M. Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 418 (1952); 3 Weinstein & Berger, *Weinstein's Evidence* ¶¶ 702[01], 702[02] (1978).

### III.

█ Defendant's third claim of error relates to the exclusion of defendant's proffered testimony as to his state of mind—that he was "very much" afraid for his life—because of threats made to him by an unnamed individual allegedly connected with Robert Garland. The evidence was correctly excluded for two reasons. First, defendant by his own admission was unable to establish a connection between the anonymous threatener and Garland except through hearsay; and, second, defendant's state of mind was irrelevant to his attempted defense that Garland, and not he, had set the fire.

### IV.

█ Lastly, we address defendant's claim of reversible error in the sentencing proceedings. Prior to sentencing the presiding justice received an unsolicited letter from State Fire Inspector Kenneth Quirion, the principal investigator in the case. The letter included several specific allegations of wrongdoing against defendant dating back to 1972, and concluded:

[I]n order to protect society from Mr. Small's constant rip-offs of the public, this Inspector is recommending Mr. Small shall be given 5 years in prison on each count of arson.

The presiding justice promptly made the contents of Inspector Quirion's letter known to both counsel. Informed of Quirion's presence at the sentencing hearing, the justice invited him to the witness stand and informed him that he had no business making a sentence recommendation, adding:

I'm not about to have the State Fire Inspector or anybody else tell me what the sentence should be.

He then offered defense counsel an opportunity to examine Quirion concerning the allegations of other wrongdoing on Small's part. After establishing that Quirion had no personal knowledge of the charges he had made, counsel requested a continuance to marshal evidence to further refute the contents of the letter.

When the sentencing hearing reconvened a week later, the justice stated:

I have reviewed the file, reviewed the evidence in the case, reviewed the presentence investigation, and have no intention of using that letter as a combination [sic] for sentencing in any way, shape or manner.

In response to counsel's argument that the letter had so tainted the proceedings that a new trial should be granted, the justice denied the motion for a new trial and reiterated that he would entirely exclude the letter from consideration. He then passed sentence—six years in the state prison—noting that the same term of years had been imposed in "a recent case involving almost the same set of facts [and] no prior record."

Defendant relies principally on the Law Court's decisions in *State v. Capitan*, Me., 363 A.2d 221 (1976), and *State v. Samson*, Me., 388 A.2d 60 (1978). Recognizing that "[s]pecific sentencing recommendations . . . can . . . put the sentencing authority under unwarranted and unfair pressures," this court held in *Capitan* that "[e]xcept in unusual circumstances a prosecutor should not be permitted to make specific sentencing recommendations." 363 A.2d at 225. Adverting to the same rationale in *Samson*, the court invalidated the sentencing proceedings where the judge had relied upon a "poll" of the residents of the defendant's community—made at the court's request by a probation officer as part of his presentence investigation—indicating "the recommendations of each person interviewed respecting the particular sentence he or she recommended as punish-

ment to be meted out to the defendant." 388 A.2d at 66.

The holdings in *Capitan* and *Samson* are wholly inapplicable to the case at bar and should be limited to the particular facts present in those cases. *See State v. Blanchard*, Me., 409 A.2d 229, 236 (1979). There was nothing in the case at bar resembling the "unwarranted and unfair pressures" that concerned this court in *Capitan* and *Samson*, which pressures the judges there brought upon themselves by *soliciting* specific sentence recommendations, either from the prosecutor (*Capitan*) or the community (*Samson*). Here, given the problem created by the highly improper action of the fire inspector in communicating with him, the presiding justice could not have handled the situation in a more commendable fashion. He promptly spread the letter upon the record so that its existence and contents were made fully known to both defense and prosecution; he declared immediately that the sentence recommendation would have no effect whatever upon his judgment; and after giving the defense a full opportunity to challenge the contents of the letter, he determined not to take any of the fire inspector's allegations of other wrongdoing into account in passing judgment. What the justice did appears to us the most judicious and well considered action possible under the circumstances.

The entry is:

Appeal denied.

Judgments affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.

NICHOLS, Justice (concurring).

I concur in the judgment entered by our Court this day.

In my view, however, the Court erred in grounding the admissibility of Strickland's testimony as to the meaning of the words "smudge sale" used by the Defendant on M.R.Evid. 702, rather than basing admissibility on M.R.Evid. 701.

We do well in the context of this case to treat the two rules, which are identical to their federal counterparts, as mutually exclusive.

M.R.Evid. 702 relates only to testimony by a witness able to qualify as an expert because he has some specialized knowledge, skill or experience that is not in the possession of the factfinders. Strickland was not testifying as an expert, and the State made no attempt in this case to qualify him as such. He was a lay witness and nothing more.

M.R.Evid. 701, on the other hand, relates solely to testimony by such a lay witness. This rule provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Traditionally, it was the rule that after a witness testified as to the words another used in a conversation with him, he could not be asked what he supposed that other intended by those words. *Whitman v. Freese*, 23 Me. 185, 187 (1843).

With the promulgation of M.R.Evid. 701 and its federal counterpart the orthodox rule was relaxed. Where it would be helpful to a clear understanding of his testimony by the factfinders the lay witness has, for example, been allowed to testify as to what another person whom he knows believed or understood. *United States v. Smith*, 550 F.2d 277, 281 (5th Cir. 1977); *John Hancock Mut. Life Ins. Co. v. Dutton*, 585 F.2d 1289, 1294 (5th Cir. 1978).

Basically, M.R.Evid. 701 is a rule of discretion, replacing the traditional rule of exclusion with a rule which enables the trial judge, on the basis of the posture of a particular case, to determine whether concreteness, abstraction, or a combination of the two will be most helpful to the factfinders in ascertaining the truth and reaching a just result. It recognizes that many witnesses can clarify what they mean only by sprinkling their testimony with opinions and inferences. As Judge Learned Hand observed long ago, the line between opinion and fact is at best only one of degree, and often depends in part upon the mentality of the witness. *Central Railroad Co. v. Monahan*, 11 F.2d 212, 214 (2d Cir. 1926). The emphasis belongs on what the witness knows and not on how he is expressing himself. 3 *Weinstein's Evidence* 702[02] (1978).

I am disinclined to subscribe to the view that once Strickland responded to the trial judge's question by indicating he knew the local meaning of "smudge sale," Strickland became, *ipso facto*, an expert, and his explanation became admissible as the opinion of an expert pursuant to M.R.Evid. 702.

I suggest we should reject such a bootstrap approach.

Rather than straining to find in the record before us minimal foundation for expert testimony, we would do better to recognize that the traditional rule has been changed and that today Strickland may be treated as a lay witness without restricting his right to voice the challenged testimony. *See State v. Lagasse*, Me., 410 A.2d 537 (1980).

We should, I submit, invoke M.R.Evid. 701 as the basis of admissibility.