**STATE of Maine**

v.

**Edmond PELLETIER.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1981.

Decided Aug. 24, 1981.

David W. Crook, Dist. Atty., Susan B. Cole, Asst. Dist. Atty. (orally), Augusta, for plaintiff.

Levine, Bishop & Levine, Ronald L. Bishop (orally), Frederick E. Levine, Waterville, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

In the early morning of January 16, 1980, Edmond Pelletier was arrested in Waterville after two police officers noticed his erratic driving. He was charged with operating a motor vehicle while under the influence of liquor. 29 M.R.S.A. § 1312. A blood test taken after arrest showed an alcohol level of .29 percent. Following a jury trial in Superior Court, Kennebec County, Pelletier was convicted of operating under the influence, his third such conviction in six years. On appeal, Pelletier raises several issues concerning the trial and sentencing proceeding. We affirm.

## I. *Jury Selection*

Pelletier alleges two errors in the jury selection. First, he contends that the court's denial of his motion for a continuance or for dismissal of the jury panel, made at the beginning of voir dire, was improper because eight of the thirty-seven members of the venire reported that either they or members of their families worked at some time in law enforcement. This number, Pelletier reasons, was disproportionate to the number having the same connection in the general public from which he concludes that he was denied his right to an impartial jury. Second, he argues that the court's denial of all but one of his challenges for cause to those members of the jury panel with law enforcement connections was prejudicial error because such jurors would be biased against him.[1]

We find no merit in Pelletier's contentions. Even if we were to ascribe some significance to connection with law enforcement, Pelletier did not show that the number of persons with that connection here was disproportionate to that of the general population. Furthermore, Pelletier has not demonstrated any resulting bias. Connection with law enforcement by itself does not require a juror's dismissal. *State*

---

1. The excused juror was an acquaintance of one of the arresting officers and was married to a former member of the Waterville Police Department. The law enforcement connection of other members of the panel ranged from past direct involvement to having distant relatives, such as in one case a nephew of a spouse, presently working as policemen.

*v. Chattley*, Me., 390 A.2d 472, 477 (1978). When asked individually, the challenged jurors responded that they would not be biased and the defendant presented no additional reason for their dismissal. Finally, Pelletier did not use all his peremptory challenges. Therefore, he waived any error in the denial of his challenges for cause. *Id.* at 477 n. 5; *State v. Albano*, 119 Me. 472, 111 A. 753 (1920). We find no error in the denial of his motion for a continuance or in the denial of his challenges for cause.

## II. Denial of Voir Dire of Witnesses

The State's witnesses included the two arresting police officers, who testified about post-arrest statements by Pelletier on the amount of beer he had drunk that evening. These statements conflicted with the account of the evening's activities offered by the defense. When the State attempted to introduce Pelletier's incriminating statements, the defendant objected and requested to voir dire each witness on the *Miranda* warnings given to Pelletier. The court denied the requests. Pelletier contends on appeal that the court's refusal to permit him to voir dire the officers on the *Miranda* warnings was, per se, a violation of his constitutional rights.

In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the United States Supreme Court held that a criminal defendant has a right to an evidentiary hearing outside of the jury's presence at which the court must determine by a preponderance of the evidence that a confession was voluntary before allowing jury consideration of it. This court has expanded on the *Jackson v. Denno* procedure by requiring the State to establish the admissibility of the confession beyond a reasonable doubt rather than by a preponderance of the evidence before the jury may hear it. *State v. Collins*, Me., 297 A.2d 620, 627 (1972).

The trial court, however, is not automatically obligated to hold an evidentiary hearing whenever the State introduces confessions or self-incriminating statements. Rather, the defendant must trigger the hearing requirement by specifically objecting to the statement's admissibility on the ground that it was made involuntarily or taken in violation of *Miranda* procedures. *See Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *State v. Melvin*, Me., 390 A.2d 1024, 1031 (1978). Here, Pelletier did not relate his voir dire request to specific defects in the admissibility of his statements. He did indicate to the court several questions he intended to ask one police officer concerning how the officers gave the *Miranda* warnings.[2] These questions, however, had already been asked and answered on direct examination; the defendant's proposed questions promised to provide no additional information. Therefore, the court properly denied his voir dire request.[3]

## III. Hearsay Objection to Testimony on the Qualifications of Expert Witnesses

In order to introduce the results of a test of the alcohol content of Pelletier's blood, the State put on as witnesses the lab technician who drew the blood sample and the chemist who analyzed it. When, in the course of qualifying them as expert witnesses, the State asked each whether they were certified in their fields, the defendant objected that the answers would be hearsay. The court overruled both objections and the witnesses responded that they were certified. On appeal, the defendant contends that the admission of these answers was error, requiring reversal of his conviction.

The defendant misconceives the nature of hearsay. The witnesses testified on a mat-

---

2.  MR. LEVINE: Your Honor, may I voir dire at this time with respect to this?
    THE COURT: Let's talk about it at the side bar. (Conference at side bar.)
    MR. LEVINE: I want to look at the card that he read, and I want to ask him where he inquired, or where the rights were given, whether it was in the field or at the police station, and the time period lapse, and whether he inquired once or twice.

3.  We note that the trial court had already conducted a suppression hearing prior to trial and had heard much testimony similar to that proposed.

ter about which they had personal knowledge. The fact of their certification was not an extra-judicial statement excluded by M.R.Evid. 802. The defendant's objection was frivolous, and the court properly overruled it.

### IV. *The Jury Instruction on Reasonable Doubt*

■ The defendant contends that the court's instruction to the jury defining reasonable doubt was error because it used an "affirmative action" analogy. The court defined reasonable doubt as follows:

> Now I have indicated to you that I would further define the term "reasonable doubt". Now as it has been stated, I believe, by one or more of the attorneys, it is not a requirement of the law that the State prove that the essential elements of the offense have been committed to a mathematical certainty, nor is it the burden of the State to prove beyond all possible doubt. That kind of proof is seldom available in a court of law. What is required is proof beyond a reasonable doubt, and that means very simply just what it says. It means the kind of a doubt for which you can assign a reason. It doesn't mean conjecture or suspicion, it means a reasonable doubt, the kind of doubt that would require you, or convince you that you should act, or that you should not act in any of the more important affairs of your own daily life. If a fact is apparent to you, that it raises the kind of a doubt that would either require you to act, or require you to fail to act in a given important situation, then that is what the law means by a reasonable doubt.

The defendant failed to object to the instruction at trial, although given an opportunity to do so, see *State v. Morey*, Me., 427 A.2d 479, 482 n. 2 (1981), so our inquiry is limited to determining whether the instruction was obvious error. M.R.Crim.P. 30, 52(b).

We have previously recommended against use of the affirmative action analogy. *See State v. Estes*, Me., 418 A.2d 1108, 1116 (1980); *State v. Carey*, Me., 303 A.2d 446, 450 (1973). As we explained in *Carey*:

> The danger of instilling in the minds of jurors an equivalence with the "mind-attitude" leading to affirmative action is that in the conduct of the serious matters of day to day living people frequently confront the inescapable fact that events will not permit them to indulge in Hamlet-like indecisiveness. Too often, what is important is that there be action, rather than that the action be right.

303 A.2d at 450. We further indicated in *Carey* that upon timely objection we might find an instruction on reasonable doubt relying on the affirmative action analogy to be error. *Id.*

■ Although we reemphasize our disapproval of this instruction, we cannot find its use here to be obvious error. As we pointed out in *Carey*, echoing the Supreme Court in *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954), this definition is "not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *State v. Carey*, 303 A.2d at 451. In addition, the court also defined reasonable doubt in terms of failure to act. *See State v. Estes*, Me., 418 A.2d 1108, 1116 (1980). Viewing the charge as a whole, therefore, we find it free of the prejudicial effect alleged by the defendant.

### V. *The Sentencing Procedure*

■ At the sentencing proceeding, held two weeks after trial, the State reviewed Pelletier's two prior convictions for operating under the influence and stressed the seriousness of the offense. The State then concluded its remarks by stating: "For this reason, I request a very substantial period of incarceration in this case and a very substantial fine."

The defendant objected to this recommendation, contending that it violated this court's strictures against prosecutors making specific sentencing recommendations. The court responded that the State's general recommendation was proper and that, in any event, it would have no effect on his sentencing decision because Pelletier's prior

record indicated the need for a substantial penalty. The court then imposed a ninety-day jail sentence and a $1,000 fine.

We have in the past expressed concern over the potential dangers of the prosecution making specific sentencing recommendations. *See State v. Small,* Me., 411 A.2d 682 (1980); *State v. Capitan,* Me., 363 A.2d 221 (1976). Our concern, however, did not necessarily lie in the specificity of the sentencing recommendation. Rather, we were concerned that the court may rely on an inappropriate recommendation, *Capitan,* 363 A.2d at 225, or be subject to "unwarranted and unfair pressures" to follow such a recommendation, *Small,* 411 A.2d at 686. There is no indication here that imposing a severe sentence, as the State recommended, would be inappropriate or that the recommendation improperly influenced the court. We cannot, therefore, find the State's comments to be error.

■ We do note the absence in the record of any indication that the court determined Pelletier's ability to pay a fine before imposing sentence, as required by 17–A M.R.S.A. § 1302.[4] The defendant, however, did not object at the sentencing hearing to the court's failure expressly to make this determination, and we cannot determine on this record whether the fine imposed was so inappropriate as to warrant our consideration on direct review.

The entry shall be:

Judgment affirmed.

All concurring.

---

**4.** 17–A M.R.S.A. § 1302 provides:

No convicted person shall be sentenced to pay a fine unless the court determines that he is or will be able to pay the fine. In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the offender and the nature of the burden that its payment will impose. No person shall be imprisoned solely for the reason that he will not be able to pay a fine.