**STATE of Maine**

v.

**Arnold TURNER.**

Supreme Judicial Court of Maine.

Dec. 4, 1978.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Margaret J. Kravchuk, R. Christopher Almy, Asst. Dist. Attys., Bangor, for plaintiff.

Kollman & Tarbell by Swift Tarbell, III (orally), William C. Kollman, Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

Indicted for burglary under 17–A M.R.S.A. § 401 (Supp.1978), defendant-appellee Arnold Turner moved for the suppression of evidence. From an order granting the motion to suppress, the State appeals pursuant to 15 M.R.S.A. § 2115–A (Supp.1965–1978).

Testimony at the suppression hearing would have warranted the presiding justice in finding the following facts: Walter Nachum reported a burglary at his garage at the Rainbow Trailer Park in Bangor on December 13, 1977. Nachum told Detective Ferland of the Bangor Police Department that he suspected Norman Timberlake, a former employee, who knew where certain missing items were hidden in the garage. Nachum also listed some twenty-five articles believed to have been stolen, including a 7¼-inch Rockwell skill saw and copper tubing. Detective Ferland learned that a tenant in the trailer park had seen an older-model gray Chevelle Malibu, with the trunk open, near Nachum's garage in the early morning hours of December 13, 1977. The tenant also reported seeing two persons near the building and car at that time. Nachum had informed the detective that Norman Timberlake's brother, Linsay Timberlake, had purchased a gray Malibu from another trailer park resident.

The next day, Detectives Ferland and Owens set out for the Timberlake residence accompanied by Detective Murray of the Old Town Police Department, who knew the brothers. En route, Murray observed Norman Timberlake driving a blue Ford van, being followed by a gray Malibu driven by Linsay Timberlake. Defendant Turner was a passenger in the Malibu. The officers followed and stopped both vehicles. Detective Ferland approached the van driven by Norman Timberlake, ordered him into the police car, and immediately placed him under arrest. *Miranda* warnings were given. Detective Owens, meanwhile, had approached the Malibu driven by Linsay Timberlake. Owens observed in the rear seat a skill saw fitting the description of the one stolen, copper tubing, and tools.

While Ferland was questioning Norman Timberlake in the cruiser, Owens returned to the police car with the saw. On observing the saw, Norman Timberlake waived his rights, confessed to the burglary, and revealed that the rest of the stolen property was in the trunk of Linsay Timberlake's Malibu. Detective Ferland asked Norman who else was with him in the burglary. Norman said he would tell if the police would not then reveal the disclosure to the person accused. Timberlake then named defendant Turner as his accomplice. Linsay Timberlake and Arnold Turner were given *Miranda* warnings, but they were not formally placed under arrest. The three men complied with the police officers' request to drive their vehicles to the Bangor Police Department. Soon after arrival, Turner was again advised of his rights, waived them, and admitted involvement in the burglary.

The trial justice found that the police officers had arrested defendant Turner but lacked probable cause to do so. He ordered the confession suppressed as fruit of the illegal arrest.

Defendant's sole contention on appeal is that because his arrest was illegal his confession may not be used against him at trial. Assuming *arguendo* that Turner's arrest was made without probable cause, a matter on which we express no opinion, we conclude that his confession should not have been suppressed. We therefore sustain the state's appeal.

In *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court set out guidelines for determining under what circumstances statements obtained after an illegal arrest must be suppressed as fruit of the poisonous tree. Although the giving of *Miranda* warnings does not necessarily assure that the Fourth Amendment violation has not been unduly exploited, statements following an illegal arrest are not automatically rendered inadmissible. Rather, a determination of admissibility must be made on the facts of each case on consideration of the following factors:

(1) the voluntariness of the statement (a threshold requirement);

(2) the giving of *Miranda* warnings;

(3) the temporal proximity of the arrest and confession;

(4) the presence of intervening circumstances;

(5) particularly, the purpose and flagrancy of the official misconduct.

In the present case, the voluntariness of the statements has not been contested. *Miranda* warnings were properly given. The statements were not the product of long detention or intensive police interrogation. There was no undue exploitation of the arrest.

Most importantly, the police conduct here, unlike that in *Brown v. Illinois*, did not constitute a purposeful or flagrant violation of the defendant's Fourth Amendment rights. *See United States v. O'Looney*, 544 F.2d 385 (9th Cir. 1976). In *Brown v. Illinois*, two Chicago detectives obtained defendant's name as an acquaintance of a murder victim. Without probable cause and without a warrant, they broke into the defendant's apartment and searched it. They waited there for the defendant's return and then arrested him at gunpoint. The Supreme Court characterized the detectives' conduct as purposefully illegal. The court noted that the veteran detectives had testified that the defendant was arrested for questioning and investigation.

Assuming *arguendo* that probable cause for arrest of Turner did not exist, we cannot characterize the assumed violation by the police as flagrant or purposeful. The initial intrusion was, at the very least, a legitimate investigatory stop on a public highway, not an illegal entry into a dwelling. "There were neither drawn guns nor police actions calculated to cause surprise, fear and confusion." *United States v. O'Looney, supra*, at 390. We are unable to draw any inference, either from Detective Ferland's testimony at the suppression hearing or from the circumstances surrounding the arrest, that Ferland thought the arrest of Turner to be improper. Detective Ferland testified that he considered Norman Timberlake's information reliable because, in addition to Timberlake's admission of his own involvement in the burglary, stolen property matching the description of the items taken was recovered from Linsay Timberlake's automobile. The trial justice held that there was no probable cause because Norman Timberlake's confession implicating Turner was not corroborated. We do not interpret his finding to mean that the arrest of Turner was not made in good faith.

■ The emphasis that the Supreme Court placed on the fifth factor in *Brown* is entirely consistent with the deterrence rationale of the exclusionary rule. The teaching of the fruit-of-the-poisonous-tree doctrine is that a determination of admissibility must be made "in light of the distinct policies and interests of the Fourth Amendment." *Brown v. Illinois, supra,* 422 U.S. at 603, 95 S.Ct. at 2261. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). The Court addressed this point in *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974), as follows:

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in wilful, or at the very least negligent, conduct which has deprived the defendant of some right."

■ We conclude that the defendant's confession was not unconstitutionally tainted by his prior arrest.

"To hold otherwise would be to invoke the Fourth Amendment exclusionary rule for a de minimis deterrent effect on errant police behavior, at a great cost to the legitimate demands of law enforcement." *United States v. O'Looney, supra,* at 391.

The entry is:

Appeal sustained.

Order of suppression vacated.

Remanded for further proceedings consistent with this opinion.

ARCHIBALD, J., did not sit.