Argued and submitted October 20, reversed and
remanded for new trial December 29, 1980,
reconsideration denied March 12,
petition for review denied March 31, 1981 (290 Or 727)

## STATE OF OREGON,
### *Respondent,*
*v.*
## JOHN ROBERT BISHOP,
### *Appellant.*

### (No. 18-743, CA 14895)

621 P2d 1196

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals his conviction of first degree manslaughter[1] for the death of his wife, asserting that the trial court erred in (1) admitting certain statements made by defendant while in custody; (2) refusing to allow defendant to put a witness on the stand whom he knew would refuse to testify; (3) admitting certain testimony by a psychiatrist called by the state; and (4) refusing to give certain jury instructions. We reverse and remand for a new trial.

Defendant admitted that he fired the pistol which caused his wife's death; the issues at trial were the circumstances under which the shooting occurred and defendant's state of mind at the time of the killing. The state contended that the killing was intentional and charged defendant with murder. Defendant pled not guilty, not guilty by reason of mental disease or defect, and also self-defense by way of justification. The evidence at trial showed that up to the time of the killing defendant had been under a great deal of stress as a result of his failing marriage with the victim and as a result of his concern over her threats to his well being and that of others close to him.

Although defendant had given different versions of what occurred, for the purposes of the issues raised on appeal, we summarize defendant's testimony at trial. He explained that on the morning of April 6, 1978, he and his wife went to their cabin near Tillamook. Sometime after they arrived, and while in a conversation with his wife, defendant heard noises outside the cabin. He went out to his truck and took out a semi-automatic pistol and an extra clip. He then returned to the cabin, placed the gun on an ice chest next to him and continued his conversation with his

---

[1] ORS 163.118 provides:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"(a) It is committed recklessly under circumstances manifesting extreme indifference to the value of human life; or

"(b) It is committed intentionally under circumstances not constituting murder.

"(2) Manslaughter in the first degree is a Class A felony."

wife. Moments later an Indian burst into the cabin and asked defendant's wife if she was all right. Defendant took the gun off the ice chest so that the Indian could observe that he was armed. With the gun pointed in the direction of his wife, he released the safety and began to turn towards the Indian. Defendant's wife shouted, "He's got a gun" and struck defendant with a two by four. As defendant fell, the gun discharged, hitting his wife eight times. Defendant got up, changed clips, and fired some shots at the Indian, who had fled.

After cleaning up the cabin, burying his wife and discarding the pistol, he flew to Waterloo, Iowa, to see his brother, and apparently intended to commit suicide. Defendant's sister-in-law notified the local police that defendant had killed his wife and defendant was taken into custody. After reading defendant his *Miranda* [2] rights and patting him down, Officer Penrose asked defendant to get into the back of an unmarked police car. He then asked defendant if he had any family in Oregon. Defendant responded "I don't want to talk about it." In a pre-trial *Miranda* hearing, Officer Penrose testified that he understood defendant's response to mean that he did not want to talk about his family in Oregon. Defendant was then handcuffed and placed in a patrol car with an Officer Arends. The two began discussing defendant's earlier days in Iowa; shortly thereafter Officer Arends asked defendant if he had been having any trouble with his wife. Defendant responded, "Not any more."

■ Defendant's first assignment of error is that the trial court erred in concluding that the statements made by defendant to police officers while in custody in Iowa were admissible. At the conclusion of the *Miranda* hearing the trial court found that defendant's statement, "I don't want to talk about it" was not sufficient to invoke his right to remain silent and that the answer he gave to Officer Arends was given voluntarily. We are bound by the trial court's findings of historical fact if they are supported by the record, *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), but we are not bound by conclusions reached by the

_____
[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966).

trial court where, as here, they are of constitutional import. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978). We have a duty to draw our own conclusions.

The Iowa police had taken defendant into custody for killing his wife in Oregon. When he was asked about his family, he stated unequivocally that he did not want to talk about "it." While the statement may lack legal precision, it made clear that defendant wanted to remain silent about his Oregon family, and, in fact, the subject was then dropped. Officer Penrose agreed at the hearing with that interpretation of defendant's statement. Once an individual in custody indicates "in any manner" that he wishes to remain silent, the interrogation must cease and his right to remain silent be "scrupulously honored." *Miranda v. Arizona,* 384 US 436, 473-474, 479, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966); *see also, Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975).

Officer Arends'[3] question as to whether defendant was having any problems with his wife (whom the officers knew was dead) clearly was intended to invoke a response from defendant concerning the killing of his wife. As such, it was not permissible, and defendant's response should not have been admitted in evidence.

The state contends, however, that defendant's remark was merely a statement of fact, neither inculpatory nor exculpatory, and its admission was harmless. In closing argument, however, the state put particular emphasis on defendant's statement[4] as showing defendant's state of

---

[3] It matters not that defendant had not made his request to remain silent to Officer Arends. A suspect may not be "passed off" with impunity to police officers who have not witnessed defendant's assertion of his rights. *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

[4] The following portion of the state's closing argument is sufficient to make the point:

"* * * The police are there, asked Bob some questions, had some conversation. 'I will talk about high school, football, fishing, but not that. Not it.' He doesn't want to talk. Penrose asks him lots of things that he answered. He appears in control. He asked Penrose things that Penrose answers and, in the back of the cop car, 'Is that Cook or whatever his name is? Is he still a policeman? A black guy?' 'Yeah.' 'Oh, I used to play football with him in high

mind in support of its contention that defendant killed his wife intentionally rather than as a result of mental disease or defect, or emotional disturbance, or self-defense.

There is no way of knowing the effect that evidence, or the argument based thereon, had on the jury. We do know that the jury did not find defendant guilty of murder, but did convict him of manslaughter in the first degree: either the killing was committed recklessly under circumstances manifesting extreme indifference to the value of human life or was committed intentionally under circumstances not constituting murder. ORS 163.118(1)(b). In either case, that determination turns on the defendant's state of mind[5] at the time of the killing, and we cannot say that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705, 24 ALR 3d 1065 (1967). It follows that the admission of defendant's statement must be deemed prejudicial and that the case must be reversed and remanded for a new trial.

---

school.' 'Oh, no kidding?' Then the question about the wife. 'I don't want to answer that.' Penrose splits. The black guy comes over. The window is down. He is shooting the breeze with Snider in the back of the car and Arends, Bruce Arends, the young guy, the uniformed officer—the youngest of the three officers from Iowa—is sitting in the front seat with Bishop. Small talk again. Same stuff. Football, high school, growing up in Iowa. Most of the things about growing up in Iowa were not how abused he was by his father. Then Arends says, 'Are you having trouble with your wife?' I mean Arends is not the investigator. He is a uniformed cop that has been brought along. 'Okay. you sit here with the defendant,' and he asks him, 'Having trouble with your wife?' and with not enough time to think he says, 'Not anymore I am not,' and Arends sees his face change immediately. He sees it go from complacency and self-satisfaction to concern. 'Not anymore I am not,' and he realizes what he said."

[5] ORS 161.085(7) and (9) provide:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Given the fact that the case must be retried, we consider defendant's other assignments of error because the questions are likely to recur on retrial.

During the trial, one of defendant's witnesses, Scott, refused to testify. The basis for his refusal was never fully articulated, but because he was then an inmate at the state prison, it is suggested that he was afraid of being treated as a "snitch." However, the state granted the witness testimonial immunity, thereby eliminating any Fifth Amendment obstacle. *State v. Classen,* 31 Or App 683, 571 P2d 527 (1977), *rev'd on other grounds,* 285 Or 221, 590 P2d 1198 (1979). After a lengthy *in camera* proceeding, the trial court ruled that defendant would not be allowed to place the witness on the stand and have him refuse to testify before the jury. Defendant relies on *State v. Classen, supra,* and *State v. Abbott,* 275 Or 611, 552 P2d 238 (1976), in contending he had the right to call Scott before the jury and to have him state his refusal to answer questions. The problem with permitting defendant to do so is that it would permit the jury to draw any inference it wished from non-testimony. In both *Classen* and *Abbott* the trial judge, but not the jury, knew that the witness had previously confessed *(Classen)* or pled guilty *(Abbott)* to participating in the crime for which defendant was standing trial, and the logical inference to be drawn from each witness's refusal to testify was the intention to protect the defendant, which influence was not unfair to the defendant.

Here, the witness Scott had not confessed to any act relating to the circumstances involving the killing of defendant's wife. However, defendant testified he had found numerous letters from Scott to his wife indicating an amorous involvement between the two. Defendant said he threw the letters in a trash can after his wife's death, so they were not available. Scott's deposition had been taken by defendant's counsel at OSP, and Scott had admitted his involvement with the victim and writing her letters. Two of the letters, defendant said, contained highly sexual overtones, and in one envelope was a nude photo of defendant's wife.

By calling Scott as a witness, his refusal to answer questions concerning his relationship with the victim,

including the writing of the letters, might have led the jury to infer a relationship which, apparently, did exist, and which, in turn, would have substantiated a part of defendant's story. The state points out, however, that because Scott is an Indian, the jury might infer that he was the Indian who, according to defendant, burst into the cabin just before the killing, which, it is contended, would be unfair to the state's case. It is true that many unwarranted inferences might be drawn from the non-testimony, but, as we said in *Classen:*

> "* * * Once immunity was granted, he could no longer incriminate himself. He had no privilege not to testify based on any other motive, and it was proper for the jury to hear him assert a nonprivileged refusal to testify, whatever might be the inferences to be drawn from the refusal." (Footnote omitted.) 31 Or App at 695.

We conclude that defendant should have been permitted to put the witness on the stand, notwithstanding his known, but non-privileged, refusal to testify.

■　　Defendant's next assignment of error involves testimony given by a psychiatrist called by the state. At trial defendant withdrew his objection to the testimony and therefore cannot now raise it on appeal. *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975).

■　　Defendant's last assignments of error deal with the court's refusal to instruct the jury on the lesser included crime of criminally negligent homicide[6] and, in support of his self-defense claim, on the character of the victim.

---

[6] The requested instruction was as follows:

"A person commits the crime of criminally negligent homicide when, with criminal negligence, he causes the death of another person.

"In order to establish criminally negligent homicide, the State must prove beyond a reasonable doubt each of the following:

"First, that the crime was committed in Tillamook County, Oregon.

"Second, that the crime was committed on or about the 6th day of April, 1978.

"Third, that the defendant caused the death of Marilyn Bishop by shooting said Marilyn Bishop with a firearm.

The trial court instructed the jury on murder, manslaughter in the first degree, ORS 163.118, and manslaughter in the second degree, ORS 163.125, but refused defendant's instruction on criminally negligent homicide. ORS 163.145. The jury found defendant guilty of manslaughter in the first degree.

*State v. Thayer,* 32 Or App 193, 195, 573 P2d 758, *rev den* 283 Or 1 (1978), sets forth the test, as stated by the Supreme Court, for determining when a lesser included offense instruction should be given:

> " 'The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater. * * *' *State v. Washington,* 273 Or 829, 836, 543 P2d 1058 (1975)."

It is difficult to conclude here that the jury could have rationally and consistently found defendant guilty of criminally negligent homicide and innocent of manslaughter in the second degree where, as here, the jury found defendant guilty of manslaughter in the first degree. In other words, the jury found that the killing was committed either "intentionally under circumstances not constituting murder," or "recklessly under circumstances manifesting extreme indifference to the value of human life," (ORS 163.118(1)(a), (b)), rather than merely "recklessly" (ORS 163.125). Having necessarily concluded that defendant's culpable mental state was greater than recklessness, the jury could not have rationally and consistently concluded that his mental state was of the lesser culpability incorporated in criminal negligence. (ORS 163.145).

---

"Fourth, that the defendant was criminally negligent in causing the death of Marilyn Bishop.

" 'Criminal Negligence' means that a person fails to be aware of a substantial and unjustifiable risk that certain results will occur or that certain circumstances exist. The risk must be of such a nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that the reasonable person would observe in the situation."

All of the foregoing analysis, however, is premised on the record submitted to the jury, some of which—statements made by defendant to police in Iowa—we have concluded should not have been admitted in evidence. Without that evidence bearing on defendant's mental state, we cannot say that a jury, if they believe defendant's version of the killing, could not rationally and consistently find defendant guilty of the lesser offense of negligent homicide and innocent of the greater offense. In capsulated form, his testimony was that after the Indian burst into the cabin, defendant picked up the pistol, which was pointed in the direction of the victim, and released the safety. When his wife shouted a warning to the Indian and hit defendant with a 2 x 4, the gun went off as he fell, firing eight times. A jury believing defendant's story could rationally and consistently find that he had "failed to be aware of a substantial and unjustifiable risk" that the pistol would go off and death result, but that he did not intentionally or recklessly shoot his wife. The requested instruction is a correct statement of the law and, on retrial, should be given if the evidence is substantially the same.

■ ■ During the trial defendant raised the issue of self-defense, and a suitable instruction was given. In support of a claim of self-defense the character of the victim is considered relevant. *State v. Thompson,* 49 Or 46, 88 P 583, 124 AS 1015 (1907); *State v. Morey,* 25 Or 241, 35 P 655, 36 P 573 (1894); *State v. Griffin,* 19 Or App 822, 529 P2d 399 (1974). There is evidence, albeit not very compelling, that defendant's wife had threatened him, and others close to him, several times. Defendant requested the following instruction, which was refused:

> "The defendant has introduced evidence of the character of the deceased. In determining whether the defendant reasonably believed himself to be in danger of death or great personal harm, you may consider whether the deceased had a violent and aggressive character."

It is a correct statement of the law and should have been given. Defendant was entitled to have the jury instructed about his theory of the case where there was evidence to support it. *State v. Greene,* 30 Or App 1019, 568 P2d 716 (1977), *aff'd* 285 Or 337, 591 P2d 1362 (1978); *State v. Ollison,* 16 Or App 544, 519 P2d 393 (1974).

Reversed and remanded for new trial.