**STATE of Maine**

v.

**Frank E. LADD, Jr.**

Supreme Judicial Court of Maine.

Argued March 3, 1981.

Decided June 30, 1981.

Janet Mills, Dist. Atty., John C. Sheldon (orally), Asst. Dist. Atty., Farmington, for plaintiff.

Christopher S. Beach (orally), Wilton, for defendant.

Before McKUSICK, C. J., and WER-NICK, GODFREY, NICHOLS, GLASS-MAN,* and CARTER, JJ.

McKUSICK, Chief Justice.

A Superior Court jury in Franklin County found defendant Ladd guilty of committing arson, 17–A M.R.S.A. § 802 (Supp.1980), at the Magno apartment building in Farmington on February 9, 1980. At trial the principal evidence against defendant consisted of a confession he gave five days after the fire during interrogation at the Farmington police station. On appeal he contends that his confession should not have been admitted in evidence because, he claims, it was obtained in violation of his *Miranda*[1] right to cut off police interrogation and also it was the fruit of an invalid arrest warrant. We reject both claims and accordingly affirm the judgment of conviction entered on the jury verdict.

## I.

At the outset we can narrow the *Miranda* issue that is in dispute before this court. At all times defendant has conceded that he received proper *Miranda* warnings before any police interrogation that resulted in his confession. For its part the State does not now make any contest over the custodial nature of defendant's interrogation by the police. The parties are, however, in sharp dispute over whether the two officers whose questioning led up to the critical confession "scrupulously honored" Ladd's right to cut off questioning.

■ As the Supreme Court of the United States stated in *Miranda v. Arizona*, 384 U.S. 436 at 473–74, 86 S.Ct. at 1627 (1966):

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his

Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

The propriety of continued police interrogation after a suspect has asserted his Fifth Amendment privilege was clarified by *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). There the Court held "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored'." Under our Maine rule the State bears the burden of proving the facts necessary for admissibility beyond a reasonable doubt. *State v. Stone*, Me., 397 A.2d 989, 995 (1979); *State v. Capitan*, Me., 363 A.2d 221, 222 (1976). Only by imposing this strict standard on the State can the justice hearing the suppression motion

> thereby the better 'insulate his mind' from a confession's inherent surface tendency to project a
>> 'near certainty of guilt and make a dispassionate judgment . . .'
> concerning operation of the factors—whether they be the special prophylactic requirements of *Miranda v. Arizona* or the traditional generalized due process 'voluntariness'—upon which the evidentiary admissibility of an extra-judicial confession depends.

*State v. Collins*, Me., 297 A.2d 620, 627 (1972) *citing and quoting State v. Merrow*, 161 Me. 111, 122, 208 A.2d 659, 664 (1965) (Webber, J., concurring).

In the case at bar, after a full hearing on defendant's pretrial motion to suppress his confession to the Magno arson, as well as confessions to three previous arsons, the Superior Court found

---

* Glassman, J., sat at oral argument and in the initial conference, but died before this opinion was adopted.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that the state has established beyond a reasonable doubt that defendant's confessions to the four crimes were knowingly and voluntarily made and that the state has in all other respects met the requisite burden for the admissibility of defendant's statements.

That compendious finding includes, we must assume, a finding beyond a reasonable doubt that the officers did scrupulously honor Ladd's right to cut off questioning, *see State v. Broucher*, Me., 388 A.2d 907, 909 (1978), and we must sustain that finding if the record furnishes "rational support for the conclusions reached," *see State v. Stone, supra* at 995. The record does contain that necessary support.

The Magno apartment building arson was investigated by State Police Detective Emery and Farmington Police Sergeant Wilcox. After completing their initial investigation, upon the basis of which they obtained a warrant for defendant's arrest,[2] the officers on February 14, 1980, sought out defendant at his place of employment. Upon meeting defendant, the officers did not execute the arrest warrant or even tell him of it. Rather, they asked him if he would be willing to talk with them about the Magno fire. Defendant agreed and went voluntarily with them to the Farmington police station.

At the station defendant, after receiving the *Miranda* warning, agreed to being questioned without having an attorney present. Although Sergeant Wilcox remained in the room throughout the interrogation, Detective Emery conducted the initial questioning and tape-recorded the exchange. After about an hour the discussion between defendant and Detective Emery became heated, and defendant told Emery, "I got no more questions. I'm not going to answer anything." And he added, "Because I ain't done nothing." Thereupon, Detective Emery told Sergeant Wilcox to serve defendant with the arrest warrant and angrily left the room, turning off the tape recorder as

he went. Although Sergeant Wilcox did not then execute the warrant, he did stay in the room with defendant.

Wilcox, who, unlike Detective Emery, had known defendant for some ten years, then asked defendant, "Do you want to talk to me anymore alone?" In response, defendant said that "he needed help with an alcohol problem" and "that the alcohol had gotten to him and the only time he'd do anything like this is when he was under the influence." It was during this discussion of defendant's alcohol problem that he confessed to the Magno arson and gave Wilcox the Bic cigarette lighter he had used to set the fire. Sergeant Wilcox then put defendant under arrest and took him to the Franklin County jail for booking. The entire episode at the Farmington police station, starting at about 5:00 p. m., covered a couple of hours. He confessed to the three other unrelated arsons the following day at the Franklin County sheriff's office. Those other confessions are not here in issue.

Whether in the circumstances defendant's statement to Detective Emery:

I got no more questions. I'm not going to answer anything. Because I ain't done nothing.

was ambiguous, thereby entitling Sergeant Wilcox to make limited inquiry solely for clarification, was a question of fact to be resolved by the Superior Court justice who heard all the testimony. On appeal the Law Court's function is a limited one, namely, solely a review function of determining whether the justice below could on this record, considering the extensive oral testimony given by all three participants, rationally have found as a fact beyond a reasonable doubt that defendant's statement was ambiguous. *See State v. Smith*, Me., 415 A.2d 553, 558 (1980). We conclude that he could.

The justice was warranted in finding that, in the context in which defendant made his statement, ambiguity existed in at least one critical respect. Even if his state-

---

**2.** The arrest warrant was in fact invalid for failure to comply with the documentary requirement of D.C.Crim.R. 4(a). See part II for a discussion of the consequences of that invalidity.

ment amounted to something more than an assertion of innocence or an impatient protest against Emery's questioning, *cf. Fare v. Michael C.*, 442 U.S. 707, 727, 99 S.Ct. 2560, 2573, 61 L.Ed.2d 197 (1979), defendant left it unclear whether he was refusing to answer further questions from *either* officer or only from Detective Emery, who up to that time had alone questioned him. At the suppression hearing, Sergeant Wilcox testified that defendant "gets upset easily" and that he, Wilcox, understood defendant's statement to be an angry outburst against Detective Emery whose questioning had annoyed him. In any event, on this evidence the Superior Court justice acted rationally in concluding that defendant's statement was not unambiguous. In face of that finding of ambiguity Sergeant Wilcox cannot be faulted for asking a single, specifically directed question to determine Ladd's desires. All Wilcox did was to ask that one clarifying question, "Do you want to talk to me anymore alone?" Ladd responded affirmatively by himself opening up the conversation in regard to his alcoholism problem.

An all-important distinction must here be drawn

> between, on the one hand, an inquiry for the limited purpose of clarifying whether the defendant is invoking his right to remain silent or has changed his mind regarding an earlier assertion of the right and, on the other hand, questioning aimed at eliciting incriminating statements concerning the very subject on which the defendant has invoked his right.

*United States v. Lopez-Diaz*, 630 F.2d 661, 665 (9th Cir. 1980). *Cf. Nash v. Estelle*, 597 F.2d 513, 517–18 (5th Cir. 1979); *Vail v. State*, Alaska, 599 P.2d 1371, 1378–79 (1979). The record before the justice amply supported his finding beyond a reasonable doubt that Wilcox's inquiry was calculated innocently to clarify defendant's statement, rather than improperly "to persuade [defendant] to reconsider his position," *Michi-*

*gan v. Mosley, supra* 423 U.S. at 104, 96 S.Ct. at 326, or otherwise to infringe upon his right to silence.

On its face the successive questioning by Detective Emery and Sergeant Wilcox does have some of the appearance of the "rough guy-nice guy" interrogation technique.[3] *See* White, *Police Trickery in Inducing Confessions*, 127 U.Pa.L.Rev. 581, 625–28 (1979) ("Mutt and Jeff" routine). However, the Superior Court justice, after hearing extensive testimony by the two officers and Ladd, all three of whom were subjected to energetic cross-examination, found as a fact that Ladd had voluntarily waived his *Miranda* right to cut off questioning. That conclusion finds rational support in the evidence adduced at the suppression hearing. For the Law Court to draw the opposing inference from the cold transcript before it on appeal would be to usurp the factfinder's function. Our appellate role is restricted to reviewing whether the trial court erred by reaching a conclusion without rational support in the record. Within the confines of our appellate supervisory powers, we can find no error in the admission in evidence of defendant's confession to Sergeant Wilcox.

## II.

Before the police brought defendant to the Farmington police station for questioning, they had obtained a warrant for his arrest from the clerk of the District Court. On appeal the State concedes that the arrest warrant was invalid because the issuing magistrate did not have before her either a sworn complaint or an affidavit from which she could satisfy herself "that there [was] probable cause to believe that an offense ha[d] been committed and that the defendant committed it." *See* D.C.Crim.R. 4(a); *see also* M.R.Crim.P. 4(a).

From the invalidity of the arrest warrant, defendant constructs an argument that his confession to the Magno arson was the "fruit of a poisonous tree," apparently

---

**3.** Police use of the "rough guy-nice guy" technique runs the serious danger of a later court determination that the police have not scrupu-

lously honored the suspect's right to cut off questioning.

either by reason of the coercive effect of Detective Emery's announcement of the existence of the warrant as he left the interrogation room or by reason of its execution by Wilcox immediately *after* Ladd confessed. *Cf. State v. Turner*, Me., 394 A.2d 798 (1978). It is difficult to see how the execution of the invalid arrest warrant *after* defendant had already confessed to the Magno crime could retrospectively make that prior confession the fruit of the invalidity. On the other hand, the revelation to defendant of the existence of the arrest warrant may have had some tendency to persuade him that the officers "had the goods on him" and that he might as well tell all. However that may be, we have no occasion here to decide whether a confession might be inadmissible as the fruit of merely the threatened use of an invalid warrant. Here the police in any event, even before they questioned defendant, had adequate probable cause to arrest him with no warrant at all. A law enforcement officer may arrest without a warrant any person who he has probable cause to believe has committed the Class B crime of arson. *See* 17–A M.R.S.A. § 15 (Supp.1980). Since, when Detective Emery left the room and at all other times during the questioning, the officers could have arrested defendant without a warrant, the subsequent confession in no way can be said to have resulted from the fatal documentary defect in the arrest warrant.

■ The information available to the officers at the time they obtained the arrest warrant—even though not stated in writing and under oath to the issuing magistrate, as is required for the warrant itself to be valid—amply supported the warrantless arrest of defendant for the arson at the Magno apartment building. The officers reasonably believed that the fire, which occurred in a vacant apartment, was of incendiary origin. They had probable cause to believe that defendant had set the fire from the following facts: Defendant had recently been evicted from the building and had "predicted" to several persons that it would burn. Defendant was seen hurrying from the scene of the fire minutes before it was discovered. Then shortly thereafter defendant was seen standing at a nearby telephone, apparently talking on it, and at the same time watching the fire; he had to be told to hang up the telephone and call the fire department. This information came to Sergeant Wilcox from citizens residing in the Magno block or in the house right next to it, who from every appearance were "innocent of criminal involvement, and volunteer[ed] their information fortuitously, openly, and through motives of good citizenship." *See State v. Parkinson*, Me., 389 A.2d 1, 9 (1978), *quoting People v. Ramey*, 16 Cal.3d 263, 127 Cal.Rptr. 629, 632, 545 P.2d 1333, 1336 (1976). The facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information would warrant any prudent and cautious person to believe defendant Ladd had committed the arson at the Magno apartment building. That probable cause, which existed prior to their questioning of Ladd, fully justified the officers' arresting defendant, whether or not they also had a warrant founded on a prior magisterial determination of probable cause. *See State v. Fogg*, Me., 410 A.2d 548, 550 (1980).

The entry shall be:

Judgment affirmed.

WERNICK and GODFREY, JJ., concur.

NICHOLS and CARTER, JJ., dissent in separate opinions.

NICHOLS, Justice, dissenting.

I respectfully dissent.

I cannot join the majority in finding an ambiguity in the Defendant's plain statement, "I'm not going to answer anything." By such words he did not equivocate as to a possible preference for one interrogator over another.

Neither can I join my colleague who in dissent declares that the only rational conclusion the evidence supports is that the Defendant by his statement intended to cut off the questioning and made that intention known unequivocably.

Mine is a middle ground. The record does not *beyond a reasonable doubt* support the conclusion that the Defendant's right to cut off questioning was "scrupulously honored." *State v. Stone*, Me., 397 A.2d 989, 995 (1979); *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

Neither does the record reflect that the Defendant himself, rather than Sergeant Wilcox, initiated the conversation which thereafter ensued. The Defendant's right to remain silent stands on the same plane with his right to the presence of counsel. Once either right is claimed, it must be rigorously protected. *See Edwards v. Arizona*, —— U.S. ——, ——, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

I find no need to reach the factual question of what may have been the second questioner's motivation in pursuing the interrogation, as does my colleague in his dissent.

CARTER, Justice, dissenting.

I respectfully dissent.

The single question here presented is whether or not the police officers were entitled, under the restrictions of the *Miranda* doctrine, to continue to question this defendant once he had expressed his desire that questioning cease. The *Miranda* case itself sets the guidelines for police to follow once such an indication is given:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise without the right to cut off questioning,

the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694, 723 (1966). By this language, the Court required that once an interrogated suspect makes known his desire for questioning to cease, the questioning must, in fact, cease. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed. 313 (1975), the Court examined the circumstances under which questioning may permissibly be resumed. Recognizing the critical safeguard of the person's "right to cut off questioning," the Court emphasized its intention to adopt "fully effective means ... to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored ...." *Id.* at 102–03, 96 S.Ct. at 325–326, 46 L.Ed.2d at 320–21 (quoting *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.[1]

Thus, in order to determine the admissibility of statements obtained after the suspect has indicated exercise of his right to cut off questioning, it must be determined if the police "scrupulously honored" the suspect's right to remain silent. *Id.*

The burden is on the state to show, *beyond a reasonable doubt*, that defendant's right to remain silent, having been asserted, was "scrupulously honored" by the police officers *before* the questioning was resumed. *State v. Stone*, Me., 397 A.2d 989, 995 (1979); *State v. Capitan*, Me., 363 A.2d 221, 222 (1976). In the present case, such a showing is not made by any reasonable view of the evidence. This defendant, after undergoing questioning for approximately an hour, stated after a period of heated interrogation: "I got *no* more questions. I'm not going to answer *anything*." (emphasis added). The detective conducting the interrogation at that point ceased his

1. The present case does not involve the procedures to be followed if the person in custody asks to consult a lawyer, because the defendant here never made such a request. In *Miranda*, the Court stated that once the individual has requested a lawyer, the questioning must cease

"until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1627–1628, 16 L.Ed.2d at 723. The Court has recently articulated a more specific exposition of that requirement. *Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

questioning, instructed his fellow police officer, in the presence of the defendant, to serve the defendant with an arrest warrant (which is now admitted to be invalid) and left the room angrily, turning off the tape recorder as he went. The second police officer, although not then executing the warrant, continued the interrogation by asking "Do you want to talk to me anymore alone?" No significant period of time had passed and no fresh warnings were given before that inquiry was made. *See Michigan v. Mosley*, 423 U.S. 96, 106, 96 S.Ct. 321, 327, 46 L.Ed.2d 313, 322 (1975). As a result of that gambit, a further dialogue occurred between the second police officer and the defendant, which resulted in the making of the challenged inculpatory statements.

This defendant could not have given a more definitive, specific, clear-cut, and all-encompassing expression of his intention that all questioning cease as of the time when he spoke. His reference is to *"no more questions."* That language indicates his intention not to deal with *any* more questions. When coupled with his immediately following statement, "I'm not going to answer *anything*," the universality of his intention with respect to the scope of further examination is not to be doubted, misunderstood, or mistaken. In invoking his right under *Miranda* to remain silent, the defendant

> is not required to use any particular language to indicate his unwillingness at that time to discuss his case or to give

any explanation or reason for refusing to continue with the interrogation. Even in cases in which a suspect makes no express assertion, no particular form of words or conduct is necessary to constitute such an invocation.

*People v. Marshall*, 41 Cal.App.3d 129, 134, 115 Cal.Rptr. 821, 824 (1974).

It is beyond belief that the second police officer could have doubted that the defendant intended, by this statement, to break off completely all questioning on the subject matter involved in the interrogation conducted by the first officer, regardless of the source from which any questions on that subject might subsequently originate. Thus, the officer's inquiry, "Do you want to talk to me anymore alone," can not be understood, by any reasonable construction of the requirements of *Miranda*, as an inquiry innocently calculated to clarify the defendant's statement. It was clearly the beginning of an effort to persuade the defendant to reconsider his decision to remain silent. *See United States v. Lopez-Diaz*, 630 F.2d 661 (9th Cir. 1980).[2] The question can only be construed as an effort to keep the discussion alive while the defendant was still emotionally agitated as a result of the initial period of questioning and to take advantage of the impact of the other officer's leaving the room after losing control of the defendant during the interrogation. It is a classic example of the "Mutt and Jeff" technique of inquisitorial interrogation.[3] This type of maneuver, after the

---

**2.** As the majority opinion points out, *Lopez-Diaz* recognizes a distinction between an inquiry to clarify whether the defendant intends to invoke his right to remain silent and one "aimed at eliciting incriminating statements concerning the very subject on which the defendant has invoked his right." *Id.* at 665. The *holding* of the case is, however, that resumption of questioning on a subject as to which defendant had expressly asserted the right to remain silent was a *Miranda* violation. The court pointed out that "no significant period of time had elapsed, nor had fresh warnings been given" between the time the defendant asserted his right to stop the questioning on the specific subject and the time at which the officer re-initiated questioning on that subject. *Id.* at 664. The *Lopez-Diaz* court found the questioning comparable to that in *United States v.*

*Barnes*, 432 F.2d 89, 91 (9th Cir. 1970) in which it held that a confrontation and interrogation "for the obvious purpose of getting defendants to abandon their self-imposed silence, were in flagrant violation of the rule as set forth in *Miranda*." The similarity of *Lopez-Diaz* and *Barnes* to the present case is obvious.

**3.** In *United States v. Bishop*, 49 Or.App. 1023, 621 P.2d 1196 (1980), the police also had used the tandem questioning technique. The court there said: "It matters not that defendant had not made his request to remain silent to [the second officer]. A suspect may not be 'passed off' with impunity to police officers who have *not* witnessed defendant's assertion of his rights." *Id.* at 1027 n.3, 621 P.2d at 1198 n.3. (emphasis added). Any insulation from impropriety that might be provided by that technique

clear-cut exercise of the right to remain silent, is precisely the subtle compulsion which the *Miranda* rule is intended to prevent.

The specific language used by the defendant to exercise his right to cut off the questioning contains no hint of ambiguity as to the defendant's intent and, by itself, could not be the basis of any proper determination by the court below that such ambiguity existed. Also, the circumstances under which the questioning was being conducted at the time the defendant made known his exercise of that right, and the circumstances under which the questioning continued, provide no support whatever for a conclusion that the defendant intended to indicate anything other than his desire that *all* questioning on the subject matter then being discussed should cease. The state had the burden to demonstrate:

> that the challenged confession meets the constitutional test of admissibility; and to contend as they do, that the refusal under the circumstances should not be considered an invocation of the privilege, they must affirmatively demonstrate that defendant "was not thereby indicating a desire to remain silent."

*People v. Marshall*, 41 Cal.App.3d at 134, 115 Cal.Rptr. at 824. The state has not carried that burden in this case.

On these facts, it is my view that the police officer, in continuing the interrogation as he did, violated the requirement that the defendant's right to "cut off the questioning" be "scrupulously honored." This is the only rational conclusion that the evidence in this record supports. I would accordingly vacate this conviction on the ground that the defendant was unfairly prejudiced by admission of statements obtained in violation of *Miranda*.

vanishes where, as here, the second officer is actually present and hears the defendant assert his right to remain silent. *See State v. Wiberg*, Minn., 296 N.W.2d 388, 391 (1980).